W. J. Dillner Transfer Company, Appellant, *v.*
Pennsylvania Public Utility Commission (No. 2).

Argued November 13, 1953.   Before RHODES, P. J.,
HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*Ernie Adamson,* with him *J. Paul Rupp, Douglass D. Storey* and *Storey, Bailey & Rupp,* for appellant.

*Thomas M. Kerrigan,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel and *Lloyd S. Benjamin,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for intervenor, appellee.

OPINION BY RHODES, P. J., July 13, 1954:

The Pennsylvania Public Utility Commission by its order of August 11, 1952, directed W. J. Dillner Transfer Company, a motor carrier, to "cease and desist the transportation of sheet steel and coils of steel, or any other transportation not authorized by its certificates of public convenience."

Among Dillner's certificated rights is the following grant (A. 61744, Folder 3) by order of the Commission dated May 19, 1947:

"To transport as a Class C. carrier, property in shipments weighing five thousand (5,000) pounds or more, which because of its size or weight requires special handling and the use of special equipment such as trucks having winches or special equipment attached, or

trucks of special body construction, or pole trailers, or drop-frame trailers, from points in the City of Pittsburgh, Allegheny County, and within a radius of fifty (50) miles thereof, to other points in Pennsylvania." This order further provided that Dillner's "application insofar as it refers to all other transportation be and is hereby refused for lack of necessity."

The Commission, on January 16, 1950, issued a rule against Dillner to show cause why its certificate of public convenience, at A. 61744, Folder 3, should not be canceled or other penalties imposed for violation of its certificate. The Commission charged Dillner with alleged violations on December 3, 1949, and December 19, 1949. On December 3, 1949, Dillner transported twenty-one coils of steel from Carnegie-Illinois Steel Corporation, Irwin Works, Dravosburg, Pennsylvania, to Enamel Metal Strip Corporation, Allentown, Pennsylvania; and on December 19, 1949, Dillner transported sheet steel in three tractor-trailer units from Carnegie-Illinois Steel Corporation, Irwin Works, to Budd Company, Philadelphia, Pennsylvania. The Commission in its rule charged that such transportation of steel was in violation of Dillner's certificate of public convenience because "the property transported . . . did not require special handling or the use of special equipment, and . . . none of the . . . tractor-trailer trucks were of special body construction or equipped with winches or special equipment."

Dillner admitted, in its answer to the rule, the shipments of steel set forth in the Commission's rule; but Dillner denied, however, that such shipments were in violation of its certificated rights, and averred that the shipments were of such weight as to require special equipment, and that the vehicles were of special body design. Dillner further alleged in its answer that the shipments were within its certificated rights at A.

61744, Folder 3, as a "heavy-hauler"; that it had full right and authority to transport the shipments in issue under its certificates at either Folder 2 or Folder 3, A. 61744; and that at Folder 2, A. 61744, it had the certificated right to transport "property" from points in Allegheny County to other points in Pennsylvania subject to certain restrictions as to "goods" and "merchandise."

The Commission thereafter, upon petitions filed with it, permitted certain motor carriers (Modern Transfer Company, Inc., Highway Express Lines, Inc., Philadelphia-Pittsburgh Carriers, Inc., Kramer Brothers Freight Lines, Inc., and Lancaster Transportation Company) to intervene in support of the Commission's rule; and two carriers (John Benkart & Sons Company and DeBolt Transfer) having heavy-hauling rights similar to Dillner were permitted to intervene for the purpose of supporting Dillner's position that the transportation in question came within the scope of Dillner's certificate.

Several hearings were held by the Commission at which witnesses testified to the effect that the transportation of coils of steel and sheet steel required neither "special handling" nor "special equipment." There was also testimony that the vehicles used by Dillner in the questioned haulage were similar in type and equipment to those used by common carriers for the transportation of general commodities. On behalf of Dillner there was evidence presented to the effect that shipments such as those here involved could not be loaded manually, and that the trucks used to transport the steel were specifically designed for such purpose.

The Commission in its order of August 11, 1952, after reviewing the original application proceeding at A. 61744, Folder 3, concluded that Dillner's certificate did not comprehend the authority claimed. The Com-

mission ruled that the transportation of coils of steel and sheet steel here involved did not require special handling or the use of the special equipment within the limited rights granted under the certificate, commonly referred to as "heavy-hauling" rights. The Commission also said in its order:

"The type of service offered by and the rights granted to the so-called 'heavy-haulers' has been limited to the transportation of extremely heavy or bulky machinery, equipment or materials such as are commonly used in or in conjunction with construction projects. The transportation of such property is a specialized transportation service, which requires for its efficient conduct inherently special vehicular equipment. The temporary or permanent attachment of blocks, chocks or chains to an otherwise ordinary truck or trailer does not transform it into such special equipment."

Accordingly, the Commission made absolute its rule to show cause, and entered its order directing Dillner to "cease and desist the transportation of sheet steel and coils of steel, or any other transportation not authorized by its certificates of public convenience." Dillner filed petitions for rehearing which were denied by the Commission. Dillner then took the present appeal.

The determinative question is whether the transportation of coils of steel and sheet steel of the size and weight here involved required special handling and the use of special equipment.[1] Under Dillner's certifi-

---

[1] The Commission in its order of August 11, 1952, found:

"The coils of steel were transported in a tractor-trailer unit, described as an open-top vehicle. The coils of steel were approximately 36 inches wide and 36 inches in diameter, weighed 2,300 pounds, and were blocked with ordinary 8-inch wooden blocks curved to fit the coil.

"The sheet steel, in bundles weighing 4,800 to 11,000 pounds, was transported in three tractor-trailer units described as regular

cate there must be both special handling and the use of special equipment. Our inquiry is limited as to whether there was substantial evidence to support the Commission's findings and conclusions. Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1437; *Pittsburgh & Lake Erie Railroad Company v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 415, 416, 85 A. 2d 646; *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 347, 98 A. 2d 218. We shall therefore limit our determination to the exact issue before us.

In the absence of compelling reasons, we will not set aside the action of the Commission in interpreting the extent and nature of certificates of public convenience issued by it. Ordinarily, a court will not invalidate a construction by an administrative agency of its own orders unless the result is clearly erroneous, arbitrary, or unsupported by evidence. 42 Am. Jur., Public Administrative Law, §101, p. 431; *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413, 414, 65 S. Ct. 1215, 89 L. Ed. 1700; *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission (No. 1),* 175 Pa. Superior Ct. 461, 107 A. 2d 159. As an administrative body issuing a certificate of public convenience the Commission is especially qualified to interpret and construe the original grant. The Commission is naturally cognizant of the factual and technical matters upon which such construction depends. However, the Commission's interpretation of its own rules and regulations is not conclusive on the courts although it may be persuasive. *Lancaster Transportation Co. v. Penn-*

---

flat body trailers. The bundles of sheet steel were secured by what is commonly known as chain binders; the chains being drawn through the holes along the sides where stake racks are usually set."

*sylvania Public Utility Commission,* 169 Pa. Superior
Ct. 284, 292, 82 A. 2d 291. Thus, if the evidence sup-
ports its findings the Commission may determine what
comes within the "heavy-hauling" authority grant and
what may be transported by carriers having the right
to transport general property.

In the present proceeding the Commission, in its
construction of the authority granted to Dillner, con-
sidered the general language used as well as the history
and record of the application proceedings. The Com-
mission pointed out that Dillner's application filed with
the Commission on August 13, 1945, at A. 61744, Folder
3, consisted of two parts. Dillner there sought a certifi-
cate of public convenience "to transport by Motor
Truck, from Pittsburgh and points within 50 miles
thereof, to points in Pennsylvania, and vice versa, arti-
cles which require special service, handling or equip-
ment, *also* castings, machinery, machines and parts
thereof, metal pipe, plates, sheets, bars, billets, blooms,
pigs, residues and ingots, in shipments weighing 5,000
lbs. or more." [Italics supplied.] The Commission by
its order of May 19, 1947, granted Dillner, after hear-
ing on its application, the right to transport as a Class
C carrier, from the City of Pittsburgh and within a
radius of fifty miles thereof to other points in Pennsyl-
vania, property which because of its size or weight re-
quired special handling and the use of special equip-
ment, and refused the application in so far as it re-
ferred to other transportation. The Commission has
held that on the evidence before it the transportation of
coils of steel and sheet steel was not within the ambit
of the heavy-hauling rights which had been granted to
Dillner. In addition to its statement that ordinary
trucks and trailers were not transformed into special
equipment by the attachment of blocks or chains, the
Commission pointed out that Dillner's heavy-hauling

rights were made state-wide to compensate the carrier for purchasing the special equipment required, and that it was necessary to draw a definite distinction between special authority permitting "heavy-hauling" and authority granting generally the right to haul property, goods, or commodities.

The record clearly discloses that the transportation of the coils of steel and the sheet steel did not require special handling and the use of special equipment, and that therefore it was not within the scope of Dillner's certificated rights at A. 61744, Folder 3, but rather within the requested authority which was denied by the Commission.

Herbert E. Rutrecht, sales manager of Modern Transfer Company, Inc., testified that the vehicle used by Dillner in transporting the coils of steel on December 3, 1949, was an open-top vehicle of the same type used by all common carriers for the transportation of general commodities. He further testified that Modern Transfer Company, Inc., operates approximately forty such open-top trailers, and that they were used for general commodity purposes. Dillner agreed that the vehicle used to transport the coils of steel "did not have chains and binders attached, nor any other special equipment other than a forward reinforced bulkhead attached."

An inspector for the Pennsylvania Public Utility Commission testified concerning the three vehicles used. by Dillner to transport the sheet steel on December 19, 1949. He stated that these vehicles were flat-body trailers without "any contrivances of any kind," and that they could not be characterized as "special."

John M. Paterson, an officer of Highway Express Lines, Inc., testified that his company had been transporting steel and steel products for twelve years, and that it does not employ any special types of equipment

for such transportation. He testified that coils of steel and sheet steel are hauled in normal open-top trailers which may be equipped with rigs for the insertion of chain binders. He also testified that equipment having reinforced bulkheads and anchoring devices for chain binders is not considered special equipment, and is used for the transportation of commodities which must be secured to the vehicle, and which are likely to shift.

I. C. Gutman, general manager of Modern Transfer Company, Inc., testified that in the transportation of steel his company used the general type of equipment in use in general commodity hauling. He further testified that the company transported steel coils from Carnegie-Illinois Steel Corporation several times a week in the normal type of open-top van trailers, which are not special equipment.

James W. Cunnane, an official of Philadelphia-Pittsburgh Carriers, Inc., testified that his company hauled coils of steel and sheet steel in standard trailers, closed or open, without the use of any special type of equipment, without special handling, and without using special personnel; and that this carrier did not use chain binders in hauling steel although its vehicles were equipped with reinforced forward bulkheads which are standard.

J. J. McGary, traffic manager of Lancaster Transportation Company, testified that the company transports coils of steel and sheet steel with its regular equipment, that is, Fruehauf trailers, the same type of equipment as used in hauling other commodities without chains and binders.

It appears that the Carnegie-Illinois Steel Corporation loaded the four shipments, which were the subject of the Commission's rule to show cause, with its own overhead crane, and that it also furnished any blocks or cradles used to hold these loads in place.

On the record before us we are of the opinion that the interpretation placed by the Commission on its grant of authority to Dillner at A. 61744, Folder 3, was supported by substantial evidence, and that the cease and desist order was not erroneous as a matter of law, nor was it unreasonable or arbitrary.

The rule to show cause issued by the Commission set forth the specific violations of Dillner's certificated rights. Dillner received notice, and the answer filed by it disclosed that it was fully aware of the issue and charges made against it. The matter was considered at several hearings and much evidence was presented by the interested parties. We think the issue was clear, and that the findings of the Commission were sufficiently definite to dispose of the questions raised. *Cf. Ryan v. Pennsylvania Public Utility Commission*, 143 Pa. Superior Ct. 517, 521, 17 A. 2d 637. There was no denial of due process in this respect or in the manner the Commission functioned. See 42 Am. Jur., Public Administrative Law, §25, p. 314; *Humphrey v. United States*, 295 U. S. 602, 55 S. Ct. 869, 79 L. Ed. 1611, 1619.

We find no reversible error in the refusal by the Commission of Dillner's petition for rehearing. Dillner by its petition for rehearing sought the opportunity to present further evidence and to convince the Commission of error in its final order. The grant or the refusal of a petition for rehearing, or further hearing, is a matter within the discretion of the Commission. *Yellow Cab Co. v. Pennsylvania Public Utility Commission*, 161 Pa. Superior Ct. 41, 55, 54 A. 2d 301.

In its answer to the Commission's rule, Dillner claimed, at least inferentially, the right to transport the coils of steel and sheet steel throughout Pennsylvania, under its authority at Folder 2 of A. 61744 which Dillner interpreted as giving the right to haul statewide all types of property or general commodities. This

question was not further raised or passed upon by the Commission in the present proceeding. However, the matter has been decided adversely to Dillner in a separate complaint proceeding appealed to this Court in which the order of the Commission was affirmed. *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission (No. 1)*, 175 Pa. Superior Ct. 461, 107 A. 2d 159.

The order of the Commission is affirmed.