Mac-Rod Transport Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 9, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Christian V. Graf,* with him *Maurice H. Goldstein,* for applicant, appellant.

*Morris Mindlin,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Edward I. Goldberg,* with him *Edward M. Larkin, Gordon E. Neuenschwander, Donald A. Brinkworth, L. Norman Dilley, Robert Engel,* and *Andrew C. Armstrong,* of the Maryland Bar, for intervening appellees.

OPINION BY HIRT, J., August 10, 1959:

Mac-Rod Transport Company is the holder of the certificated right, granted by the Pennsylvania Public Utility Commission at Docket A32909 Folder 3, "To transport, as a Class D Carrier, construction equipment and property which requires trucks having winches or special equipment, between points in the said Western portion of the State of Pennsylvania." Ostensibly, under this certificated authority, Mac-Rod,

as we will refer to the present appellant, filed with the Commission its Supplement No. 6 to its "Tariff Freight—Pa. P. U. C. No. 2" to become effective January 22, 1958. By the procedure of filing a supplement to its tariff and by holding itself out to the public as qualified to render the service, Mac-Rod sought specific authority in connection with its certificate A32909 to transport the following property from the Irwin Works at Dravosburg to Vandergrift, Pennsylvania: "Steel coils, weighing min. of 8,000 pounds each, but no more than 40,000 pounds each, and require such special equipment as cradles, coil racks, in order to transport same, min. weight 25,000 pounds."

A number of complaints to the supplement were filed by other carriers alleging that the contemplated additional service was not within the operating authority of Mac-Rod Transport Company and that it would result in unwarranted competition with the operation of the complainants under their certificated authority.

A hearing on the complaints was held on March 28, 1959 when all of the parties were afforded the opportunity of argument. In disposing of the issues raised by the complaints the Commission on November 5, 1958 sustained the complaints and ordered: "That the respondent immediately cease and desist from transportation of steel coils, sheet steel, steel bars and similar iron and steel commodities, as well as holding itself out to transport such commodities or other commodities not authorized by its certificate of public convenience." The Commission also ordered Mac-Rod Transportation Company to file a cancellation of its Supplement No. 6, supra. From this order Mac-Rod Transport Company appealed in the present proceeding before us.

In a prior similar complaint proceeding, brought by New Castle Express et al., in 1957, the Commission

had occasion to discuss at some length the nature and extent of the rights granted to Mac-Rod Transport Company under its certification. In that proceeding the complaint was directed to the transportation of steel bars from Duquesne to Ellwood City. An answer was there made by Mac-Rod that such transportation was not in violation of its certificate, since transportation of steel bars required the use of trucks with special equipment. The Commission in that proceeding characterized Mac-Rod as a "heavy hauler" and concluded: ". . . that the type of flat-bed equipment used by [Mac-Rod] the respondent for the transportation of steel bars, which were secured to such equipment with chains and binders, is not inherently special vehicular equipment which is necessarily used in the field of heavy hauling." And in noting a limitation on the right of a heavy hauler the Commission said: "heavy hauling certificates authorize only the transportation of extremely heavy or bulky machinery, equipment or materials such as are commonly used in or in conjunction with construction projects. They do not authorize the transportation of sheet steel, coil steel, steel bars and similar iron and steel commodities."

In the present case the appellant sought to justify the extension of its service on the ground that the transportation of steel coils requires the use of coil racks which, it argued, qualify as special equipment within the contemplation of its certificate. In support of this contention appellant's traffic manager testified that the racks necessary to the transportation of coils usually consist of "4 x 4's secured to the trailer by angles, or by a 2 x 4 which is nailed to the truck, or by a piece of flat iron which is nailed to the truck floor. The coils are loaded by United States Steel plant crane on the 4 x 4 with the eye of the coil to the front and rear of the truck, and the coils are secured by

chains or binders. The unloading is also performed by the steel plant crane." The president of the appellant company testified: ". . . that, for the transportation proposed, he would use flat-bed trailers equipped with bulkheads, side pockets, and coil racks or cradles, with the coils secured by chains and binders and, where needed, covered with tarpaulins." He stated that in his opinion, such items constituted "special equipment".

As against this testimony the chairman of Intrastate Haulers Conference, a well qualified witness, in giving his opinion as an expert, stated that the use of coil racks or cradles does not constitute "special equipment" in the transportation of steel coils. There was other competent testimony to the effect that in the carriage of steel coils "such blockage or safety binders" commonly are not regarded as "special equipment."

It was for the Commission to interpret the extent and nature of certificates of public convenience issued by it. Because of the intricacies of the technical problems involved the Commission is especially qualified to speak with authority in construing the original grant. And while the Commission's interpretation of its orders is not conclusive on us, we, in the absence of compelling reasons, will not set aside the action of the Commission based upon its conclusion as to the extent of certificated rights. *Dillner Trans. Co. v. Pa. P. U. C. (No. 2)*, 175 Pa. Superior Ct. 472, 477, 107 A. 2d 164 and authorities there cited. Cf. also *Weston Hauling Inc. v. Pa. P. U. C.*, 185 Pa. Superior Ct. 503, 138 A. 2d 286. The Dillner Transfer Co., like the present appellant, had been certified as a heavy hauler and in the above proceeding we affirmed the conclusion of the Commission that: "The temporary or permanent attachment of blocks, chocks or chains [for the transportation of steel coils] to an otherwise ordinary truck or trailer does not transform it into such special equipment."

In this proceeding consistently with our conclusion in the *Dillner* case, supra, the Commission in reality reaffirmed the holding of the prior New Castle Express complaint proceeding. In the record before us in these appeals we are unable to find any lawful reason for setting aside the action of the Commission in the above respect.

Orders affirmed.

WATKINS, J., dissents.