Modern Transfer Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued October 7, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for appellants.

*James H. Booser,* with him *McNees, Wallace & Nurick,* for appellants.

*Frank Rogers Donahue, Jr.,* with him *John B. Gest,* for appellants.

*Albert E. Luttrell,* Assistant Counsel, with him *Harris J. Latta, Jr.,* Assistant Counsel, *Thomas M. Kerrigan,* Assistant Counsel, and *Lloyd S. Benjamin,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*John C. Kelley,* with him *Randolph Stauffer, William J. Wilcox* and *Hull, Leiby & Metzger,* for applicant, intervening appellee.

OPINION BY RHODES, P. J., July 21, 1955:

These appeals are from an order of the Pennsylvania Public Utility Commission, dated August 23, 1954; two of the five commissioners dissented. The order granted the application of Jones Motor Company, Inc., at Application Docket No. 59731, folders 8 and 9, to modify its presently certificated class A routes in the Allentown, Bethlehem, Easton, Stroudsburg area by an extension of such routes from Allentown to Pottstown, a distance of 13 miles, with the further right to render through service between points on these class A routes, by way of the extention, and points on applicant's other class A routes in the Philadelphia, Pottstown, Reading area.

Originally, Jones had class A rights to haul between the Borough of Bally, Berks County, and Philadelphia and intermediate points, including Spring City, Trappe, King of Prussia, and Bridgeport; between Philadelphia and Reading; and between Reading and Bally. These routes are designated as its "southern"

routes. In 1949, the Commission denied Jones' application, at Application Docket No. 59731, folder 2, Am-B, to transport property as a class D carrier from points in the Borough of Spring City and within 10 miles to points within 135 miles. In 1950, Jones acquired additional class A routes designated as its "northern" routes, by purchasing the operating authority of Allentown-Easton Motor Express, Inc., and of Allentown-Bangor Motor Transfer, Inc. The latter was certificated to conduct a route service between Allentown, Bethlehem, Stroudsburg, and other points to the north of Allentown in the Pocono area; while Allentown-Easton Motor Express, Inc., was certificated to conduct a route service between Allentown, Easton, and intermediate points by way of Bethlehem, Butztown, and Dryland.

It is obvious that the purpose of the present application was not merely to obtain an extension of class A rights from Allentown to Pottstown, but to effect a consolidation of Jones' prior distinct and unconnected "northern" and "southern" class A routes. The commission's order, in effect, provides for such a consolidation, and also has the effect of granting applicant a very substantial portion of those rights denied it in 1949. As a result Jones could haul from Philadelphia, by using the newly certificated connecting route, as far north as Mountain Home in the Poconos. In addition Jones may haul between such vital areas as the Allentown, Bethlehem, Easton, Stroudsburg territory and Philadelphia, Reading, or Pottstown.

Following the filing of the instant application on May 17, 1950, protests were filed by at least ten carriers, including Modern Transfer Company, Follmer Trucking Company, Arrow Carrier Corporation, Highway Express Lines, Inc., Fowler & Williams, Inc., Bickley's Auto Express, D. F. Bast, Perkiomen Trans-

fer Company, Reading Transportation Company, and Reading Company. Protestants operated under distinct grants of authority, but each protestant occupied a competitive position in some of the broad territory granted Jones in the present order. In addition, representatives of York Motor Express Company and Branch Motor Express Company testified in behalf of protestants. These two companies also occupy a competitive position in some of the territory granted Jones by this order. Extensive hearings were held at which applicant and protestants produced numerous witnesses.

On July 28, 1952, the commission, by a short form order, approved the application by a three to two vote. Upon petition of protestants, the commission, on August 25, 1952, granted a supersedeas. On December 8, 1952, the commission granted protestants' petition for a rehearing, limited to the right of protestants to show changed conditions as to public necessity in the area since the last hearing. Further hearings having been held, the commission, on April 26, 1954, issued a short form order, again by a three to two vote, affirming its prior order of July 28, 1952, approving the application. Protestants appealed to this Court, which granted their petition for supersedeas on May 24, 1954. Three days later, May 27, 1954, the commission's petition for remission of the record to enable it to make more specific findings was filed, and on June 8, 1954, we granted the petition. On August 23, 1954, the commission entered the order, from which these appeals have been taken, affirming its prior order of April 26, 1954, by a similar vote.

Our duty on appeal is not to exercise our independent judgment on the record or to weigh conflicting evidence, but it is limited in this respect to the question whether there is substantial evidence to support the

findings and order of the commission. *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 347, 98 A. 2d 218; *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 553, 556, 106 A. 2d 901. From a careful review of the record in this case, we are of the opinion that the order of the commission granting the application must be reversed for lack of substantial evidence to support its findings and conclusions.

In seeking to combine rights under existing certificates, together with additional authority, the burden of proof was upon applicant to establish (1) the need for the additional and proposed service, and (2) inadequacy of existing service. *Modern Transfer Co., Inc., v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 197, 206, 12 A. 2d 458; *Lancaster Transportation Company v. Pennsylvania Public Utility Commission,* 169 Pa. Superior Ct. 284, 293, 82 A. 2d 291; *Zurcher v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218; *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* supra, 175 Pa. Superior Ct. 553, 558, 559, 106 A. 2d 901. In discussing applicant's existing "northern" and "southern" routes, the commission's order of August 23, 1954, states in part: "Proof of public need is required in every application for new service. Once proven, such necessity may be presumed to continue to exist until the contrary is conclusively proven. In transfer applications such presumption continues in favor of the transferee after a completed transfer. We note, therefore, that public convenience and necessity are conclusively established in favor of applicant on this record over all routes involved except for the 13 miles of connecting route. . . . Restrictions imposed by the Commission upon a carrier in favor of competitors [may] be removed by

the Commission upon consideration of matters which affect the competitive factors as opposed to public need of service. Matters of local and individual requirements, for example, may be sufficient to impel the commission to remove restrictions, which matters, of themselves, may be insufficient to support the grant or denial of a certificate of authority." The present application involved the grant of additional rights under section 203 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, Art. II, 66 PS §1123, and could not properly be treated as merely an application to remove existing restrictions. Cf. *Lancaster Transportation Company v. Pennsylvania Public Utility Commission,* supra, 169 Pa. Superior Ct. 284, 292, 293, 82 A. 2d 291. The application as approved does not merely extend applicant's operating rights within an area it is already serving, but combines two such areas and actually extends the total area of applicant's operations. Also, while there is a presumption of continuing public convenience and necessity in transfer applications (*Hostetter v. Pennsylvania Public Utility Commission,* 160 Pa. Superior Ct. 94, 98, 99, 49 A. 2d 862), it is clear that the present application does not involve the transfer of existing rights, but rather contemplates the combining of the applicant's "northern" and "southern" routes by the grant of an additional right. Since there has never been any prior proof of public convenience- or need for service between the two areas, there can be no presumption of continuing public convenience and necessity to aid Jones in this application.

The findings of the commission that the authority sought is necessary or proper for the service, accommodation, convenience, or safety of the public must be supported by substantial evidence. "In this respect, substantial evidence means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. . . . [The term] is synonymous with 'competent and relevant evidence having a rational probative force' ": *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 416, 85 A. 2d 646, 650. See *Follmer Trucking Company v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 75, 80, 90 A. 2d 294.

The record is voluminous, consisting of approximately 1,000 pages. It would serve no useful purpose to review the testimony of each witness separately, or discuss the alleged absence of detailed findings by the commission. The crucial question is whether the whole record contains substantial evidence to support the grant of the application. In a record so voluminous there is naturally some testimony which, taken out of context and in isolation, might appear superficially to support the commission's finding of public necessity. The evidence must be substantial in its totality in support of the commission's order or produce a situation to be resolved by the commission on conflicting evidence.

Applicant presented 52 witnesses, representing various shippers, who purportedly testified on behalf of the application. It is significant that the testimony of 15 of the 52, or approximately 29 per cent, was subsequently repudiated or negatived and rendered valueless as shipper testimony tending to show need for additional service and inadequacy of existing service. Some of these 15 witnesses were not authorized by their companies to testify; one company subsequently ceased operations; and another moved out of the area involved. The testimony of 4 additional witnesses was also of little value to show inadequacy and need since they did not use any common carriers for a long

period of time or used applicant's service exclusively, or do not use common carriers at all but use their own trucks. Two witnesses were not protesting against existing service or desirous of additional service but were mainly interested in rates. Of the remaining 31 witnesses, 15 testified that, while there were minor complaints as to existing service, generally service was satisfactory, and that they either had not complained to the existing carriers or had not requested the carrier to try to remedy these minor complaints. Further, 18 of these 31 witnesses testified that they knew other carriers were available for their use but they had not used them; that they were unfamiliar with the services available from such carriers; or that they did not know that there were other carriers available for their use. Two of these witnesses further testified that, while existing service was satisfactory, they desired applicant's services partially for the reason they desired a choice of carriers into the area involved. Both of these witnesses had available the services of more than one existing carrier into the area.

"In some isolated cases there were complaints as to the manner in which some particular utility had served that shipper, but there were still other carriers available which held certificates": *Modern Transfer Co., Inc., v. Pennsylvania Public Utility Commission,* supra, 139 Pa. Superior Ct. 197, 208, 12 A. 2d 458, 463. The same may be said here. While there may have been isolated instances of inadequacy of existing service by one carrier and unsatisfied service demands, generally there were other certificated carriers available. In other instances, witnesses complained about services which some existing carriers failed to perform such as pick-up service on call, daily pick-up service, or same-day delivery; yet admittedly they had never asked for such services.

Viewed in its entirety, there is no such evidence as would support the commission's finding of need for the broad authority sought by the applicant. The burden was upon the applicant to show the need for the extensive rights sought on the combined routes including the 13-mile connecting route between Allentown and Pottstown. This was not met by equivocal or inconclusive testimony which, if it shows anything, substantiates the adequacy of existing service between the principal points on the combined routes. In our opinion the evidence furnishes no reasonable basis for the commission's action.

If the evidence presents a definite conflict as to public need for an applicant's service in an area, the sufficiency of the available facilities and the extent of competition to be allowed are administrative questions within the sound discretion and judgment of the commission. *Zurcher v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218; *Ruettger v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 388, 392, 64 A. 2d 675. Considering the broad scope of the rights sought in the present application, we are unable to say that the evidence, though voluminous, was of such a character or quality as to render it substantial or productive of a definite conflict as to any public need for applicant's service in the entire area. Of course, it is not necessary that an applicant establish a demand for service in every square mile of the territory certificated; proof of necessity within an area generally is sufficient. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 421, 85 A. 2d 646; *Zurcher v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218; *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* supra, 175

56

Pa. Superior Ct. 553, 558, 106 A. 2d 901. On the other hand, desired flexibility in administrative procedure does not justify an order without substantial evidence to support it. *Leaman Transportation Corporation v. Pennsylvania Public Utility Commission*, 153 Pa. Superior Ct. 303, 308, 33 A. 2d 721; *Kulp v. Pennsylvania Public Utility Commission*, 153 Pa. Superior Ct. 379, 384, 33 A. 2d 724. The question as to the sufficiency of the evidence to support a grant of authority is directly related to the nature and extent of the rights sought. In view of the extensive and comprehensive authority sought here, the evidence produced cannot support a conclusion that there is a public need for the proposed operations of the applicant, and that existing services and facilities are inadequate.

The order of the commission is reversed; each of the parties shall pay for printing its own brief, the expense of printing the record, and other costs of the appeals shall be paid one-half by appellants and one-half by intervening appellee.