Motor Freight Express, Appellant, *v.* Pennsylvania Public Utility Commission (No. 2).

Argued October 7, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, and ERVIN, JJ. (WOODSIDE, J., absent).

*James W. Hagar,* with him *McNees, Wallace & Nurick,* for appellants.

*John E. Fullerton,* Assistant Counsel, with him *William A. Donaher,* Assistant Counsel and *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Joseph M. Loughran,* for applicant, intervening appellee.

OPINION BY RHODES, P. J., January 17, 1956:

This is an appeal by Motor Freight Express from an order of the Pennsylvania Public Utility Commission of December 13, 1954, directing the issuance of a certificate of public convenience to J. W. Peterson, John E. Murphy, and Walter E. Leonard, copartners, trading and doing business as Turnpike Express, evidencing the commission's approval of the right to operate motor vehicles as a common carrier, for the transportation of property as a class D carrier, with certain exclusions, from points in the Counties of Allegheny and Westmoreland to points in the City of Philadelphia and within thirty-five airline miles of the limits thereof and vice versa.[1]

The application of Turnpike Express was filed with the commission on January 9, 1951. The application was protested by the Pennsylvania Railroad Company and twelve certificated motor carriers including Motor Freight Express, Lancaster Transportation Company, Kramer Brothers Freight Lines, Inc., Philadelphia-Pittsburgh Carriers, Inc., and Highway Express Lines, Inc. The commission held numerous hearings, and on November 16, 1953, issued a short form order granting applicant certain rights to haul property as a class D carrier which were restated in the order of December 13, 1954. Appeals were taken to this Court by the five

---

[1] The commission's order grants applicant an eastern terminal area within thirty-five airline miles of the city limits of Philadelphia. Due to the fact that the city limits of Philadelphia are irregular, it is difficult to ascertain the points that are included in the grant of authority. In *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1)*, 180 Pa. Superior Ct. 294, 119 A. 2d 661, the terminal area was within an airline distance of thirty-five miles of City Hall in the City of Philadelphia. Although proof of necessity for the service of an applicant within an area generally is sufficient, there should be consistency where applicants are granted rights to render similar service.

aforementioned motor carriers. Concurrently appellants filed petitions for supersedeas, which, after hearing, were denied on January 5, 1954. Thereafter all appellants except Motor Freight Express discontinued their appeals. Turnpike Express was permitted to intervene and was added as a party appellee. On January 5, 1954, we granted the petition of the commission for the remission of the record for further study and consideration and to make specific findings of fact. On December 13, 1954, the commission issued, in lieu of its order of November 16, 1953, the order from which this appeal has been taken.

Appellant contends that in considering Turnpike's application the commission had before it a secret report and recommendation, submitted by the staff of the commission, summarizing the evidence. No such report was made a part of the record. Appellant claims that no such report was made available to it, and that, since it was given no opportunity to point out any erroneous findings or conclusions contained therein, this procedure violates the rudiments of fair play and the principle of exclusiveness of the record and constitutes a denial of due process. This matter was never presented to the commission and is not now before us; it was not assigned as error in the appeal petition. A question such as this, not relating to jurisdiction, which has not been raised before the commission, or considered by it, cannot be raised by appellant on appeal. *Middletown Borough v. Pennsylvania Public Utility Commission,* 143 Pa. Superior Ct. 444, 447, 17 A. 2d 904. See, also, *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission (No. 2),* 175 Pa. Superior Ct. 472, 481, 107 A. 2d 164.

Appellant's second contention is that the findings and order of the commission granting the application are not supported by substantial evidence, and that

therefore the action of the commission in authorizing competition in the areas involved constitutes an abuse of administrative discretion. This is another proceeding where the testimony as to the inadequacy of existing service and as to the public need for the proposed service was conflicting. A similar factual situation was before us in *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* 180 Pa. Superior Ct. 294, 119 A. 2d 661, where we affirmed the commission's order.[2] In the present proceeding the commission in its order analyzed the conflicting testimony and concluded as follows: "After full consideration of the record in this proceeding we are of opinion and find that the existing transportation service available between the Allegheny-Westmoreland County area on the one hand, and the City of Philadelphia and a 35-mile radius thereof, on the other, is not of a type or character which satisfies the public need and convenience, and that the proposed service would tend to correct or substantially improve that condition; . . ." It is clearly established by a brief summation of the evidence that it supports the commission's order. The evidence is similar to that presented in support of the application in *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* supra, 180 Pa. Superior Ct. 294, 119 A. 2d 661, involving approximately the same areas. In the present case there was testimony of twenty-one shipper witnesses who appeared to support Turnpike's application. However, of these twenty-one witnesses eight testified only as to the need for the type of service which Turnpike proposed to render between the areas involved. There was no reference by these eight witnesses as to any inadequacy of existing service. In addition to testi-

---

[2] The commission's orders were dated August 13, 1951, and November 29, 1954, the application having been filed on August 26, 1949.

fying to such need, the remaining thirteen shipper witnesses also testified that the existing service by other certificated carriers was inadequate. These witnesses expressed a desire and a need for overnight service between the Philadelphia-Pittsburgh areas. It appears in this record that in many instances the over-all delivery time was approximately three or four days, and that there were delays in pickup service from one to four days. Dissatisfaction was expressed by some shippers due to the fact that certificated carriers would not make a direct pickup unless there was sufficient amount of cargo to warrant it. In such cases the pickups were made by a connecting carrier and taken to a terminal for forwarding over the road. It was stated that this type of service was entirely unsatisfactory because of the attendant disadvantages, such as the resultant delays in delivery. It also appears that the applicant was experienced in the motor carrier business and was engaged in a substantial carrier operation, and that it had or would obtain the additional equipment and capital necessary to satisfactorily carry on the proposed service.

The protesting carriers did not produce any shipper witnesses. The testimony which they presented was to the effect that the proposed service would create undue competition with existing service, and that the granting of the application would adversely affect their operation and their ability to serve the public.

In *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1)*, supra, 180 Pa. Superior Ct. 294, 301, 119 A. 2d 661, where the question was also raised as to the sufficiency of the evidence to support the commission's order in granting the application, we made this applicable statement: ". . . where the evidence presents, as here, a definite conflict as to the inadequacy of existing service and as to the public need

of an applicant's proposed service in an area or areas, the sufficiency of the available facilities and the extent of competition to be allowed are administrative questions within the sound discretion and judgment of the commission. Modern Transfer Company v. Pennsylvania Public Utility Commission, 179 Pa. Superior Ct. 46, 55, 115 A. 2d 887. In view of the conflicting evidence in this proceeding, we are unable to say that the commission's order permitting applicant to compete with existing carriers between the two most important industrial and business areas in the Commonwealth is not supported by substantial evidence. . . . For various reasons, the inadequacy of existing service may be such that it requires more than one additional carrier in the area. One additional carrier, if not completely correcting the situation, would at least tend to improve the existing condition. Cf. Ruettger v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 388, 64 A. 2d 675."

The number of motor carriers rendering service between the Pittsburgh and the Philadelphia areas, and the dates when they were certificated are set forth in *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* supra, 180 Pa. Superior Ct, 294, 119 A. 2d 661, where we discussed this transportation problem which the commission has had before it over the years. It is to be expected that transportation facilities between these areas should normally be expanded with population increase and industrial development.

Appellant's last contention is that, if the commission's order is not reversed, the present record should be remanded to the commission for the incorporation of the record of a subsequent interchange application by Turnpike. Subsequent to the present basic application, Turnpike filed an interchange application wherein it

requested authority to interchange traffic with class A, B, and D carriers for pickup and delivery purposes in both the Pittsburgh and Philadelphia areas. On April 18, 1955, the commission granted the interchange application from which order appellant appealed to this Court at No. 238, October Term, 1955. The record in that case was remanded to the commission for further consideration and the making of detailed findings of fact. The commission, on October 31, 1955, issued its order in lieu of the order of April 18, 1955. Appellant's position is that Turnpike misrepresented its intention to the commission, in the present proceeding, relative to direct overnight service, or, at least, the commission was not justified in finding that applicant's service would differ from that of existing carriers or tend to improve the existing service. Appellant would have the present record remanded that the commission might make findings and an order based on the records of the two proceedings. We find no merit in appellant's contention. The rights and privileges sought on each application are the basis of separate proceedings. The basic application was primary and interchange rights are supplemental thereto. The interchange rights could have no validity apart from the approval of the basic application which is the subject of the present appeal. But the order of the commission in the proceeding before us is in no way dependent upon the subsequent interchange application and proceeding before the commission. See *Lancaster Transportation Company v. Pennsylvania Public Utility Commission*, 169 Pa. Superior Ct. 284, 292, 82 A. 2d 291.

The order of the commission is affirmed, at the cost of appellant.