Motor Freight Express, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued November 21, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*James W. Hagar,* with him *McNees, Wallace & Nurick,* for appellant.

*John E. Fullerton,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, and *John R. Gavin* and *William A. Donaher,* Assistant Counsel, for Public Utility Commission, appellee.

*Jerome Solomon,* with him *Frederick L. Kiger,* for applicant, intervening appellee.

OPINION BY WOODSIDE, J., March 26, 1956:

This is an appeal by Motor Freight Express from an order of the Pennsylvania Public Utility Commission dated October 31, 1955, granting to J. W. Peterson, John E. Murphy and Walter E. Leonard, Copartners trading and doing business as Turnpike Express, the supplemental right to interchange property (excluding certain enumerated special types) with authorized Class A, B and D carriers for original pickup and final delivery in the counties of Allegheny and Westmoreland provided the shipments have destination or origin in the City of Philadelphia and within thirty-five (35) miles of the limits thereof, and vice versa.

Turnpike Express, Intervening Appellee in this case, had been granted a certificate of public convenience to operate motor vehicles as a Class D Common Carrier between points in the counties of Allegheny and Westmoreland and the City of Philadelphia and within thirty-five (35) miles of the limits thereof and vice versa, by a short form order dated November 16, 1953,

followed by a long form order dated December 13, 1954.[1]

Motor Freight Express, appellant herein, also protested the original certification, and on appeal we upheld the action of the Commission, finding that the evidence amply supported the conclusion that such additional carrier was necessary for the public convenience, particularly to satisfy the public need for direct overnight service between the Philadelphia and Pittsburgh areas. *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 2)*, 180 Pa. Superior Ct. 307, 119 A. 2d 668 (1956).

During the hearing on the original application Turnpike Express made it clear that it would pick up the shipments and deliver the shipments itself, and did not intend to employ any of the local carriers in pickup and delivery even if the shipment were small and originated in, or were consigned to, an outlying point within its territory.

On March 18, 1954, four months after the granting of the original rights through the short form order, the

---

[1] Rule 201 of General Order No. 29 of the Pennsylvania Public Utility Commission provides for classification of common carriers of property by motor vehicles as follows:

"The following classification of common carriers by motor vehicle is adopted:

"A—Between fixed termini or over designated routes.

"B—Between any points in a designated area.

"C—From a designated area to undesignated points over undesignated routes.

"D—Under special certificates."

For further details relating to classification, and the rights of carriers in the various classifications, see Rules 202, 203, 204 and 205 of General Order No. 29, supra; *Lancaster Transportation Co. v. Pennsylvania Public Utility Commission*, 169 Pa. Superior Ct. 284, 82 A. 2d 291 (1955); and *Noerr Motor Freight, Inc. et al. v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 62, 118 A. 2d 248 (1955).

application for transfer rights which is now before us was filed by Turnpike Express.

It appears from the evidence taken during the hearing on the application for transfer rights that Turnpike Express, without authority and in violation of law, started transferring freight almost immediately after commencing operations.

On April 18, 1955 the Commission issued its short form order approving the application for interchange rights and Motor Freight Express filed this appeal. The record was remitted to the Commission for further consideration and findings, and on October 31, 1955 the final order was filed in lieu of the order of April 18, 1955, approving the right to interchange as applied for.

On the appeal from the original certification, the appellant asserted that the record in that appeal should have been remanded so that the record in the instant proceedings could be made a part thereof. We refused, pointing out that the order of the Commission in the proceedings then before us was in no way dependent upon the subsequent interchange application and proceeding then before the Commission. *Motor Freight Express v. Pennsylvania Public Utility Commission*, supra. This case settles the question of the basic rights of Turnpike Express. What we now have before us are the transfer rights.

We are conscious of the scope of our review in this matter. Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1437, as amended provides: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

On appeal this Court is not to exercise its independent judgment on the record nor to weigh conflict-

ing evidence, but its inquiry in this respect is limited to whether there is substantial evidence to support the findings and order of the Commission: *Modern Transfer Company et al. v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 46, 115 A. 2d 887 (1955) ; *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 98 A. 2d 218 (1953). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 85 A. 2d 646 (1952) ; *Modern Transfer Co. v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 197, 207, 12 A. 2d 458 (1939). No particular type of evidence is required, the only requirement is that the evidence as a whole be legally sufficient to support the order of the Commission. *Garner et al. v. Pennsylvania Public Utility Commission,* 177 Pa. Superior Ct. 439, 110 A. 2d 907 (1955).

On the other hand as stated by President Judge RHODES in *Cage v. Public Service Commission,* 125 Pa. Superior Ct. 330, 332, 189 A. 896 (1937) : "Necessarily, the exercise of its (the Public Service Commission's) administrative discretion is not without some limitation. It may not be capricious, arbitrary, or unreasonable; and an order of the commission must be founded on competent and relevant evidence, and otherwise be in conformity with law."

Even though no rights were sought or granted to Turnpike Express to interchange freight originating or destined beyond its original territory, nevertheless, this limited interchange privilege was supplemental to and enlarged its original operating rights and therefore requires substantial evidence to support its certification. *Zurcher v. Pennsylvania Public Utility Commission,*

supra; *Lancaster Transportation Co. v. Pennsylvania Public Utility Commission,* supra. Section 202(b) of the Public Utility Law of May 28, 1937, P. L. 1053, Art. II, Sec. 202(b), 66 PS §1122 (b).

We have thoroughly examined this record and we are of the opinion that the evidence lacks the substance necessary to support the certification of the interchange rights.

The testimony in support of the application was in substance as follows:

One of the copartners of Turnpike Express, testified that Turnpike Express had been tendered and accepted interchange shipments at Greensburg by three other motor carriers for over-the-road shipment to Philadelphia, and that at least four carriers in the Philadelphia area had tendered shipments for carriage to the Pittsburgh terminal. Turnpike Express has also turned over to local carriers, for local delivery, a number of shipments at both the Philadelphia and Pittsburgh terminals after Turnpike Express had carried them to its terminals. He testified that small shipments destined for outlying points in the terminal areas would, for economic reasons, accumulate in the terminal until there are a sufficient number to warrant delivery, if they could not be turned over to local carriers for earlier delivery.

In further support of the application, Turnpike Express relied upon the testimony of two representatives from local carriers in the Pittsburgh area and two representatives from local carriers in the Philadelphia area. Their testimony was essentially the same. They have been interchanging freight with Turnpike Express almost since the time of Turnpike's original certification, in some instances because the shipper routed the shipment for over-the-road carriage by Turnpike, and on other occasions without shipper request.

All four of the local carrier representatives further testified that they had no complaint as to the interchange service of the other over-the-road carriers operating in the same area as Turnpike Express, that they used such interchange service and that it was satisfactory. In short, they were supporting this application not because the existing service was unsatisfactory but because they wished to honor the routings given by shippers and because it would be a convenience to their companies to so interchange. They were also desirous of handling local delivery business which Turnpike Express would turn over to them. None of these witnesses purported to be authorized to testify on behalf of the shippers they served and none testified to any reason why the shippers routed the shipments through Turnpike Express. No shipper testified.

The burden upon Turnpike Express was not so strict as to require a showing that the additional rights were absolutely necessary, *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission*, supra, nor that there was a present demand for the service in every point in its territory; but it was incumbent upon Turnpike Express to show that the necessity existed within the area generally served and that such service was reasonably necessary for the accommodation or convenience of the public. *Zurcher v. Pennsylvania Public Utility Commission*, supra. Among the recognized methods of indicating this public necessity is to show the inadequacy of the existing service, *Kulp v. Pennsylvania Public Utility Commission*, 153 Pa. Superior Ct. 379, 382, 33 A. 2d 724 (1943). Unfortunately for applicant's position its own witnesses testified that the existing service was satisfactory, and that they had no complaints concerning it. The testimony of the four local carrier witnesses in the main established only an occasional actual shipper re-

quest for the services of applicant, the bulk of their concern being the convenience and mutual profit which they would gain by opening up these general interchange rights with Turnpike Express within their respective areas. One Pittsburgh area carrier witness stated that some requests had been made, but admitted that interchange with Turnpike Express was begun at the latter's instance, not at the request of a shipper. The actual routing requests via Turnpike Express were isolated instances, the bulk of which originated in a very small number of shippers. The evidence here reasonably leads only to the conclusion that in a few isolated instances, arising from but a handful of shippers, there have been shipper requests for local interchange with Turnpike Express. Taken as a whole, the evidence establishes that existing service is adequate and that except for these few requests, the interchange rights were sought and supported for the convenience and economic remuneration of applicant and its proposed local interchange carriers. While economy and convenience of the carrier are matters which the Commission may consider, *Alko Express Lines v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 27, 32, 30 A. 2d 440; *Garner v. Pennsylvania Public Utility Commission,* supra, the interest of the public, not the carrier is of primary consideration. *Perry County Telephone & Telegraph Co. v. Public Service Commission,* 265 Pa. 274, 281, 108 A. 659 (1919); *Modern Transfer Co. v. Pennsylvania Public Utility Commission,* supra, 139 Pa. Superior Ct. 197.

Where a carrier receives original rights based, at least in part, on his allegation that interchange of other carriers delayed service, and only four months thereafter seeks the right to do the very thing that he said caused delay in shipments by existing carriers, it seems to us that its application for interchange should not be

granted without more substantial evidence of the public's need for such convenience than is present in the instant record.

The order of the Commission is reversed at the cost of intervening appellee.