Gradison Auto Bus Company, Inc. et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued April 13, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

304

*Robert H. Griswold*, with him *McNees, Wallace & Nurick*, for protestant, appellant.

*David J. Armstrong*, with him *Dickie, McCamey, Chilcote & Robinson*, for protestants, appellants.

*Thomas C. Zerbe, Jr.*, Assistant Counsel, with him *James G. Hanes*, Assistant Counsel, and *Joseph I. Lewis*, Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Frederick L. Kiger*, with him *David M. Janavitz*, for applicant, intervening appellee.

OPINION BY WOODSIDE, J., September 13, 1962:

This appeal from an order of the Pennsylvania Public Utility Commission involves the right of the Shafer Coach Lines, Inc. to operate buses as a common carrier over the Airport Parkway between Pittsburgh and the Greater Pittsburgh Airport.

The commission, after application and hearing, granted Shafer this right over the protests of Gradison Auto Bus Company, Inc., The Yellow Cab Company of Pittsburgh and the Airlines Transportation Company, all of which now have authority to operate over the same route. The three protestants appealed.

The issue before us is the sufficiency of the evidence to support the commission's order. The Airport Parkway is a four lane limited-access highway extending from the City of Pittsburgh to the Greater Pittsburgh Airport. The Yellow Cab Company of Pittsburgh operates taxicabs over the parkway between the airport and points in Pittsburgh. Airlines Transportation Company operates six limousines and twelve buses, equipped for carrying baggage, over the parkway between the airport and several hotels in the downtown area of Pittsburgh and Webster Hall in the Oakland area. Gradison operates a typical bus service between the airport and Pittsburgh. Its business became so unprofitable that it discontinued its service in January 1960, but reinstated its service after Shafer filed the application in this case.

Shafer operates a bus service between Aliquippa and Pittsburgh along the Ohio River through Coraopolis and McKees Rocks. It also operates a bus line between the Greater Pittsburgh Airport and Coraopolis, serving a part of Moon Township, a rapidly growing community in the immediate vicinity of the airport. Shafer can thus transport passengers between the airport and Pittsburgh by way of Coraopolis and McKees Rocks.

By the order before us, Shafer obtained authority from the commission to operate bus service from the village of Stoops Ferry, which is on its route between Aliquippa and Coraopolis, through Moon Township to the Greater Pittsburgh Airport and thence over the Airport Parkway to Pittsburgh "with the right to render shuttle service between points on said route . . ." The order thus gives Shafer authority to operate a bus service over the parkway between the airport and Pittsburgh in direct competition to the appellants. Although it is evident that the application was to secure the right to operate a bus service between the airport and Pittsburgh, the evidence presented by the appli-

cant relates solely to the population explosion of Moon Township and the advantages to residents of the township to have direct bus service to Pittsburgh. It is not necessary for us to review the evidence relating to the Moon Township residents. It amply supports the need of these residents for this service, and that part of the order authorizing the service for them will be affirmed. The question before us relates to the new competitive service over the parkway between the airport and Pittsburgh.

The commission had no authority to grant Shafer the right to establish this competing service over the Airport Parkway unless it was shown to be "necessary or proper for the service, accommodation, convenience, or safety of the public". Public Utility Law of May 28, 1937, P. L. 1053, §203, 66 P.S. §1123.

This determination is for the commission. "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." The Public Utility Law of May 28, 1937, P. L. 1053, §1107, as amended, 66 P.S. §1437.

We have stated repeatedly that our duty on appeal is not to exercise our independent judgment on the record or to weigh conflicting evidence, but it is limited in this respect to the question whether there is substantial evidence to support the findings and order of the commission. *Modern Transfer Co. v. Pennsylvania Public Utility Commission,* 182 Pa. Superior Ct. 110, 113, 125 A. 2d 463 (1956) ; *Motor Freight Express v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 622, 626, 627, 121 A. 2d 617 (1956) ; *Follmer Trucking Co. v. Pennsylvania Public Utility Commission,* 189 Pa. Superior Ct. 204, 211, 150 A. 2d 163 (1959). The desired flexibility in administrative pro-

cedure does not justify an order without substantial evidence to support it. *Leaman Transportation Corporation v. Pennsylvania Public Utility Commission*, 153 Pa. Superior Ct. 303, 308, 33 A. 2d 721 (1943) ; *Modern Transfer Company v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 46, 56, 115 A. 2d 887 (1955).

There is no substantial evidence of the need for additional service between the Greater Pittsburgh Airport and Pittsburgh. The commission's order sets forth that two witnesses "testified that it would be most convenient for them to [use the proposed service] by taking the bus from the Airport, where they could find shelter in bad weather." The reference was to a witness who resides in Moon Township approximately one mile from the airport terminal. He testified that he would prefer to have his wife drive him to the airport and take a bus to Pittsburgh from there, than to take the bus where it passes within a block of his home. The other witness testified that he "probably" would take the bus from the airport, a half or three quarters of a mile from his home rather than take it where it passes within a quarter of a mile of his home.

The commission also makes reference to the testimony of one of the protestants' witnesses who said that two persons interviewed by him had "expressed a desire for the proposed services". The names of these two persons were on a list containing the names of 39 persons who, according to the applicant, desired its proposed service. None of these 39 persons was called as a witness. Counsel for the applicant admitted on the record that none of those on the list needed transportation from the airport. This list was placed in the commission's files, but it was not admitted into evidence. A protestant's witness had attempted to interview these 39 persons and said that only two had expressed a desire for the proposed service. This testimony had *no*

probative value and could not be used to support a finding. It was not only all hearsay—in part hearsay of hearsay—but the testimony relied upon was brought out during a cross-examination directed to attack the credibility of testimony which had been presented to rebut evidence which the commission had already rejected as inadmissible. The commission and similar agencies are not bound by the strict rules of evidence, but they can not give probative value to that which lacks all semblance of evidence.

Over 30,000 persons travel by public conveyance between the airport and Pittsburgh each month. If there is a need for additional service, there should be no difficulty in establishing that need by competent evidence. It is too clear for discussion that there is no evidence in this case which supports a finding of any such need. It is evident that the applicant here is attempting to secure a right through the back door which it is unwilling to seek by the front door. It has been unwilling to apply for, and present the necessary evidence to support, a shuttle bus service between Pittsburgh and the Greater Pittsburgh Airport, yet that is what it is seeking, and that is what the commission gave it.

The commission contends that it is not necessary for Shafer to present evidence of a need for bus service between the airport and Pittsburgh over the parkway because Shafer now has the right to serve these two points over a different route. Neither Shafer nor the commission cite any authority for this contention. It is not necessary to establish need every time a carrier seeks to take advantage of a newly constructed highway between two points which it has authority to serve. On the other hand, a carrier may not obtain a right to compete with other carriers over a new route without showing need merely because it has authority to operate over a different route between the two communities.

Shafer applied for an amendment to its certificate of public convenience in order to obtain the new and additional right of transporting passengers over the parkway between Pittsburgh and the airport. Before the commission has authority to grant such right, it is required by law to hold a hearing, receive evidence and pass upon the question of the public necessity for the additional right. Public Utility Law of May 28, 1937, P. L. 1053, §202 and §203, as amended, 66 P.S. §1122 and §1123; *Lancaster Transportation Co. v. Pennsylvania Public Utility Commission,* 169 Pa. Superior Ct. 284, 292, 293, 82 A. 2d 291 (1951); *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 322, 334, 335, 124 A. 2d 393 (1956); *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 8, 132 A. 2d 754 (1957). A right or privilege which is supplemental to and enlarges a carrier's original operating rights requires substantial evidence to support it. *Motor Freight Express v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 622, 627, 121 A. 2d 617 (1956). In an application for the enlargement of the authority of a carrier, the burden is upon the applicant to establish the need for additional service. *Motor Freight Express v. Pennsylvania Public Utility Commission,* 188 Pa. Superior Ct. 80, 85, 146 A. 2d 323 (1958).

The applicant has not met the burden of proving public necessity for the new and additional service of carrying passengers over the parkway between the City of Pittsburgh and the Greater Pittsburgh Airport. If there is any public necessity for the additional service between these points, Shafer should have no difficulty in presenting evidence of such necessity. In its present application, it has not met the burden of establishing the need for such additional service.

The order appealed from is amended by striking out the authority given to the applicant to pick up or dis-

charge passengers at the Greater Pittsburgh Airport for transporting over the Airport Parkway between the airport and the City of Pittsburgh, and as amended the order is affirmed. Half the costs to be paid by the appellants and half to be paid by the intervening appellee.