**ELITE INDUSTRIES, INC., Corporate Livery, Inc., J & J Leasing & Rentals, Inc., Tropiano Transportation Service, Inc., Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.

Decided Jan. 30, 2002.

Reargument Denied April 2, 2002.

Mark Pfeiffer, Philadelphia, for petitioners.

Rhonda L. Daviston, Harrisburg, for respondent.

Before McGINLEY, Judge [1] PELLEGRINI, Judge (P.), KELLEY, Judge.[2]

KELLEY, Judge.

Elite Industries, Inc., Corporate Livery, Inc., and J & J Leasing & Rentals, Inc. (hereinafter collectively referred to as "Protestors") petition for review of an order of the Pennsylvania Public Utility Commission (PUC) which reverses the initial decision of the Administrative Law Judge (ALJ) and grants the exceptions filed by Perry J. Camerlengo, Jr. to the ALJ's decision. The PUC's order further directs that a certificate of public convenience be issued, subject to certain conditions, to Camerlengo and grants Camerlengo's request for a waiver of PUC regulation 52 Pa.Code § 29 .333(a) regarding vehicle equipment requirements for luxury type vehicles with a seating capacity of 15 passengers or less, excluding the driver. We reverse.

By application docketed March 24, 2000, Camerlengo sought PUC approval for the right to begin to transport, as a common carrier, persons in limousine service using vehicles seating no more than 15 passengers, including the driver, between points in Delaware, Philadelphia, Chester, Montgomery and Bucks Counties and from points in said counties to points in Pennsylvania and vice versa. Camerlengo also sought a waiver of PUC regulation 52 Pa. Code § 29.333(a) to operate a limousine service in luxury type vehicles with a seating capacity of 15 passengers or less, excluding the driver.[3] After the application was published in the Pennsylvania Bulletin on April 8, 2000, protests were filed in opposition to the application.

On March 31, 2000, Camerlengo filed an application for temporary authority which, after publication in the Pennsylvania Bulletin, protests were filed in opposition thereto. Camerlengo's temporary application also sought a waiver of 52 Pa.Code § 29.333(a). By order entered June 23, 2000, the PUC granted temporary authority and the requested waiver authorizing Camerlengo to transport, as a common carrier, persons in limousine service, using vehicles seating no more than 15 passengers, including the driver, between points in the city and county of Philadelphia, and the counties of Bucks, Chester, Delaware and Montgomery and from points in said

---

1. This case was originally argued before a panel consisting of Judge Pellegrini, Judge Kelley and Senior Judge Rodgers. Because of the untimely death of Senior Judge Rodgers, the case was submitted to Judge McGinley as a member of the panel.

2. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on December 31, 2001.

3. Section 29.333(a) provides:

   (a) Limousine service may be operated only in luxury type vehicles with seating capacities of ten passengers or less, excluding the driver.
   52   Pa.Code § 29.333(a).

counties to points in Pennsylvania and vice versa.[4]

A hearing was held before the ALJ on August 9, 2000. Camerlengo appeared *pro se* and testified on his own behalf. Protestors appeared by respective counsel and presented documentary evidence only. After concluding that Camerlengo failed to meet his burden of proof pursuant to PUC regulation 52 Pa.Code § 41.14(a) and § 41.14(b),[5] the ALJ denied Camerlengo's application and further ordered Camerlengo to cease and desist from providing unauthorized transportation service in the Commonwealth in violation of the Public Utility Code and/or PUC rules and regulations. Camerlengo filed exceptions to the ALJ's initial decision.

Upon review, the PUC pointed out that pursuant to Section 1103(a) of the Public Utility Code,[6] a certificate of public convenience shall be granted by order of the PUC only if the PUC shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience or safety of the public. The PUC also pointed out that, at the time that Camerlengo's appli-

---

4. By Secretarial Letter dated March 29, 2000, the PUC granted Camerlengo the right to transport persons in group and party service using vehicles seating no more than 15 passengers, including the driver, between points in Pennsylvania. In addition, by order entered April 14, 2000, Camerlengo was granted emergency temporary authority to transport persons in limousine service using vehicles seating 15 passengers or less, including the driver, between points in the city and county of Philadelphia and the counties of Bucks, Chester, Delaware and Montgomery, and from points in the said counties to points in Pennsylvania and return; subject to the condition that the service is restricted to the use of Hummer, Jaguar, Mercedes Benz and BMW vehicles which have been modified to luxury limousines and which have seating capacities of 10 passengers or more, excluding the driver.

5. At the time of the ALJ's decision, Section 41.14, entitled "Evidentiary criteria used to decide motor common carrier applications-statement of policy", provided as follows:
    (a) An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful public purpose, responsive to a public demand or need.
    (b) An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service, and, in addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally.

    (c) The Commission will grant motor common carrier authority commensurate with the demonstrated public need unless it is established that the entry of a new carrier into the field would endanger or impair the operations of existing common carriers to an extent that, on balance, the granting of authority would be contrary to public interest.

6. 66 Pa.C.S. § 1103(a). Section 1103 governs the procedure to obtain certificates of public convenience. Section 1103(a) provides as follows:
    (A) GENERAL RULE.—Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable. In every case, the commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.

cation was pending before the ALJ, PUC regulation 52 Pa.Code § 41.14 required that certain evidentiary criteria be used to decide motor common carrier applications. Specifically, the applicant had the burden of demonstrating that (1) approval of the application will serve a useful public purpose, responsive to a public demand or need; and (2) it possesses the technical and financial ability to provide the proposed service. In addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally. 52 Pa.Code §§ 41.14(a); 41.14(b).

However, the PUC adopted a final policy statement on March 21, 2001, which provided that an applicant seeking authority to operate a limousine service did not have to demonstrate that approval of the application would serve a useful public purpose, responsive to a public demand or need. This final policy statement was published in the Pennsylvania Bulletin on May 5, 2001 and became effective on that date. Accordingly, the PUC determined that Camerlengo did not have to show a public demand/need because the PUC's March 21, 2001, final statement of policy obviated an examination of public need with respect to limousine service.[7]

Notwithstanding the foregoing determination, the PUC stated that the record established a public need for the proposed service. The PUC also determined that the record demonstrated that Camerlengo was technically and financially fit and that Camerlengo did not demonstrate any pro-

pensity to not operate safely and legally as required by 52 Pa.Code § 41.14(b).

■ Accordingly, the PUC granted Camerlengo's exceptions and reversed the ALJ's initial decision. The PUC further directed that a certificate of public convenience be issued to Camerlengo for the right to begin to transport, as a common carrier, persons in limousine service using vehicles seating no more than 15 passengers, including the driver, between points in the Counties of Delaware, Philadelphia, Chester, Montgomery and Bucks, and from points in said counties to points in Pennsylvania and vice versa. The PUC also granted Camerlengo's request for a waiver of PUC regulation 52 Pa.Code § 29.333(a) regarding vehicle equipment requirements for luxury type vehicles with a seating capacity of 15 passengers or less, excluding the driver, so long as the service is restricted to the use of Hummer, Jaguar, Mercedes Benz and BMW vehicles that are modified to be luxury limousines. This appeal by Protestors followed.[8]

Protestors raise the following issues on appeal: (1) Whether the PUC can abrogate the statutory requirement that applicants for limousine authority prove public demand/need for the proposed service; and (2) Whether the PUC's finding of public demand/need is supported by substantial evidence.

In support of the first issue, Protestors argue that the PUC has no authority to eliminate the statutorily mandated re-

---

**7.** Pursuant to the March 22, 2001 final policy statement, 52 Pa.Code § 41.14 was amended, effective May 5, 2001, to include subsection (d), which provides as follows:

(d) Subsections (a) and (c) do not apply to an applicant seeking authority to provide motor carrier of passenger service under §§ 29.331–29.335 (relating to limousine service).

52 Pa.Code § 41.14(d).

**8.** Where, as here, the PUC grants a certificate of public convenience, this Court may not alter its decision absent an error of law, a violation of constitutional rights or a lack of evidence to support its findings. *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission*, 99 Pa.Cmwlth. 420, 512 A.2d 1359 (1986).

quirement of proving public demand/need. Protestors contend that Section 1103(a) of the Public Utility Code requires the PUC to make findings of fact that all certificates of public convenience are necessary or proper for the service, accommodation, convenience, or safety of the public. Protestors assert that the necessary or proper language has been interpreted by the courts and the PUC as requiring an applicant to show a public demand or need. Protestors contend that as a result of the statutory language found in Section 1103(a) and the interpretation thereof, the PUC does not have any discretion to abrogate the need requirement by approving a statement of policy. Protestors argue that the PUC cannot adopt a policy that would serve as a substitute for the evidence required by the statute. Thus, Protestors contend, the PUC is without authority to eliminate the requirement found at 25 Pa. Code § 41.14(a) that limousine applicants prove a useful public purpose, responsive to a public demand/need.

As stated previously herein, Section 1103(a) of the Public Utility Code requires that the PUC issue an order granting a certificate of public convenience only if the PUC finds or determines "that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." 66 Pa.C.S. § 1103(a). Prior to January 1, 1983, the PUC traditionally required a motor common carrier applicant requesting a certificate of public convenience to produce evidence establishing: (1) a public need for the proposed service; (2) the inadequacy of existing service; and (3) the financial and technical capacity to meet the need in a satisfactory fashion. *See Morgan Drive Away,* 512 A.2d at 1360 n. 2. On November 19, 1982, the PUC adopted the provisions of 52 Pa.Code § 41.14, effective Jan-

uary 1, 1983, which effectively preserved the criteria traditionally employed, but eliminated the applicant's evidentiary burden of demonstrating the inadequacy of existing service.[9]

A challenge was brought to the legal standard set forth in 52 Pa.Code § 41.14 and employed by the PUC. In *Seaboard Tank Lines, Inc. v. Pennsylvania Public Utility Commission,* 93 Pa.Cmwlth. 601, 502 A.2d 762 (1985), Seaboard asserted that the new legal standard set forth in 52 Pa.Code § 41.14 was erroneous, unlawful, and unconstitutional because the requirement of demonstrating inadequate service was in fact legislatively mandated and beyond the discretion of the PUC to modify. This Court held, however, that the inadequacy requirement was not legislatively mandated. *Seaboard,* 502 A.2d at 765–67. We held that "[i]nstead, the requirement was formulated, and recognized as arising in a regulatory context, as the commission sought to vindicate its mandate to protect the public interest by preventing unrestrained and destructive competition." *Id.* at 766. We held further that the new criterion set forth in Subsection (c) of 52 Pa.Code § 41.14 was totally suitable for continuing pursuit of the PUC's mandate. *Id.* at 767. This Court stated that "[t]o the extent that adequacy of service was an end to be achieved by the passage of utility laws, we believe that this latter criterion is suitable to continue seeking such an end." *Id.*

Based on this Court's decision in *Seaboard,* the PUC contends that it can alter the criteria found in 52 Pa.Code § 41.14 and that the criterion found in Subsection (a) of 52 Pa.Code § 41.14 requiring a showing of public demand/need is not statutorily mandated. We disagree.

---

9. *See* footnote 4 of this opinion for the text of 52 Pa.Code § 41.14 as adopted in 1982.

■ As previously stated by this Court in *Seaboard*, "the [PUC] cannot under the guise of regulation act arbitrarily, nor can it capriciously exercise the functions lodged in it." *Id.* at 766. Although the mandate contained in Section 1103(a) of the Public Utility Code is broad, the PUC is still required to find and determine that the granting of a certificate of public convenience is *necessary* or proper for the service, accommodation, convenience, or safety of the public. By eliminating the requirement, with respect to limousine service, that an applicant demonstrate that approval of the application will serve a useful public purpose, responsive to a public demand or need, the PUC is effectively abrogating its statutory mandate of determining whether the service is necessary. Accordingly, we conclude that the PUC may not eliminate an applicant's burden of demonstrating a public demand or need for limousine service based upon the mandate contained in Section 1103(a) of the Public Utility Code.[10]

In support of the second issue raised herein, Protestors argue that the PUC's finding of public demand/need is not supported by substantial competent evidence. Protestors contend that Camerlengo did not prove a public demand/need for the proposed service between the specified intrastate points. Protestors assert that the PUC has repeatedly stated that supporting witnesses must identify the Pennsylvania points of origin and destinations between which transportation is required.

Herein, Protestors argue, Camerlengo failed to present any evidence of the need for service within the application territory.

■ Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Department of Environmental Resources v. Pennsylvania Public Utility Commission*, 18 Pa.Cmwlth. 558, 335 A.2d 860 (1975), *aff'd*, 473 Pa. 378, 374 A.2d 693 (1977). It is well settled that where the facts support the PUC's findings, this Court may not make an independent judgment in substitution of the judgment of the PUC. *Lancaster Yellow Cab & Baggage, Inc. v. Pennsylvania Public Utility Commission*, 61 Pa.Cmwlth. 160, 432 A.2d 1143 (1981). However, the " 'desired flexibility in administrative procedure does not justify an order without substantial evidence to support it.' " *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, 181 Pa.Super. 322, 124 A.2d 393, 400 (1956) (quoting *Modern Transfer Company v. Pennsylvania Public Utility Commission*, 179 Pa.Super. 46, 115 A.2d 887, 891 (1955)).

■ The burden was upon Camerlengo to establish a public need for the proposed service. *Morgan Drive Away.* What may constitute a need for service depends upon the locality involved and the particular circumstances of each case. *Noerr Motor Freight.* It is not necessary that an applicant establish a present demand for his service in every square mile of the territo-

---

**10.** We note that the PUC also contends that the public need standard has been preempted by federal law, specifically 49 U.S.C § 14501(c), and that as a result the PUC is left with the responsibility to regulate safety. Section 14501(c) provides, in pertinent part, that a state may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of any motor carrier. However, our review of Section 14501(c) reveals first that this Section deals with motor carriers of property and that Section 14501(a), 49 U.S.C. § 14501(a), which deals with motor carriers of passengers, is applicable only to transportation provided by a motor carrier of passengers subject to jurisdiction under Title 49 on an interstate route. This matter deals strictly with intrastate transportation. Thus, the public need standard, as previously employed by the PUC, has not been preempted by federal law.

ry to be certificated; proof of necessity within the area generally is sufficient. *Id.*

 Herein, notwithstanding its determination that Camerlengo did not have to show a public demand/need for its limousine service, the PUC found that the economic growth evident in Southeastern Pennsylvania and the record established a public need for the proposed service. As support for this finding, the PUC cited to certain portions of Camerlengo's testimony and Camerlengo's exceptions to the ALJ's decision.

With respect to the portions of Camerlengo's testimony cited by the PUC as support for its finding, our review reveals that those portions of the cited testimony do not support a finding of public demand/need for the proposed limousine service. The cited portions of Camerlengo's testimony relate mostly to whether Camerlengo had obtained prior PUC approval and to Camerlengo's providing jobs through other limousine services. Camerlengo's testimony fails to specifically address a public demand/need in the general area of the proposed service area or between specified points in the proposed service area.

We note further that the PUC's reliance on assertions made by Camerlengo in his exceptions to the ALJ's decision as evidence of public need was erroneous. The PUC has promulgated regulations governing the submission of evidence, prohibiting the submission of additional evidence after the close of the record unless for good cause shown by the PUC or upon motion by a party, and permitting the filing of a petition to reopen the proceeding after the close of the record for the purpose of taking additional evidence before a final decision is issued. *See* 52 Pa.Code § 5.402; § 5.431; § 5.571. Based on these regulations, assertions made by a party in exceptions to an ALJ's decision do

not constitute substantial evidence upon which the PUC may base an order granting a certificate of public convenience.

Therefore, Camerlengo failed to establish a public demand/need for the service as proposed in the application for public convenience. Accordingly, the PUC's finding of public need is not supported by substantial evidence.

The PUC's order is reversed.

### *ORDER*

AND NOW, this *30th* day of *January,* 2002, the order of the Pennsylvania Public Utility Commission in the above captioned matter is reversed.