Motor Freight Express and Horn's Motor Express, Inc., Appellants, v. Public Service Commission.

Argued October 19, 1934.

166

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*E. Mode Vale* and *Edmund C. Wingerd*, for appellants.

*Samuel Graff Miller*, with him *Paul H. Rhoads, E. Everett Mather, Jr.*, and *John Fox Weiss*, for appellee.

OPINION BY CUNNINGHAM, J., March 13, 1935:

Prior to November 22, 1932, Motor Freight Express, one of the appellants, was the holder of consolidated certificates of public convenience authorizing the transportation of freight and merchandise by trucks over various routes in the territory bounded roughly by Philadelphia on the east, Harrisburg on the west, Pottsville on the north and York on the south.

Horn's Motor Express, Inc., the other appellant, had a certificate authorizing it to transport property to and from all points on State Highway Route No. 11 between the Pennsylvania-Maryland state line and Harrisburg. The principal points along the route, which traverses the Cumberland Valley, are Green-

castle, Chambersburg, Shippensburg and Carlisle. Its certificate is subject, however, to the restriction that it may not transport shipments consigned from Carlisle to Harrisburg or from Harrisburg to Carlisle. This prohibition against the furnishing of service, in either direction, between Carlisle and Harrisburg was inserted in the certificate of Horn's Motor Express, Inc., as we understand the record, because at the time its certificate was granted, service between those points was being furnished by Daily Motor Express, Inc., another carrier hereinafter mentioned.

Horn's Motor Express, Inc., is the only carrier operating over the portion of the route running from Carlisle to the state line, and there is no through service by truck or rail from points on its route to Lancaster or Philadelphia. Its business is extensive; the service rendered is a store-door pick up and delivery overnight service in both directions, upon regular schedules. Since 1930, appellants have been exchanging freight with each other at Harrisburg, thereby furnishing a joint, or connecting, service under which shipments move from any point on the line of one to any point on that of the other, and under joint rates filed with the commission.

On November 22, 1932, the commission issued its "General Order No. 29," effective January 1, 1933, and prescribing "Rules and Regulations Governing Common Carriers of Property by Motor Vehicle." The applicable portions of the order read:

"Rule 5

## CLASS (a) TRUCKERS

Unless otherwise specifically provided in the certificate of public convenience, truckers operating between fixed termini or over designated routes shall have the

following rights and be subject to the following limitations:

\* \* \* \* \* \* \* . \*

(c)   They shall not accept property destined to points not on the route, unless application has been made for such right and approval granted, excepting that they may accept property for delivery to railroad stations on the route for further transportation by rail.

. \* \* \* \* \* \* \* \*

(e)   They shall not participate in through routes or joint rates with other truckers, unless application has been made for such right and approval received. ......"

As this order interfered with the interchange of freight between appellants at Harrisburg, they filed with the commission, in the latter part of December, 1932, their joint application, setting forth the manner in which they were then exchanging freight and participating in through routes and joint rates with each other between the points on their respective routes, and praying, on behalf of Horn's Motor Express, Inc., that the commission grant it the right to accept property at Greencastle, Chambersburg, Shippensburg, and other points upon its route, destined to points on the routes of Motor Freight Express, and to participate with it in through routes and joint rates, and, on behalf of Motor Freight Express, that it be granted the right to accept shipments at points upon its routes destined to points on the route of Horn's Motor Express, Inc., in the same manner.   Protests were filed by the Pennsylvania Railroad Company, Reading Company and Reading Transportation Company, and testimony was taken.

Under date of April 9, 1934, the commission made a report and order refusing the prayer of the petition and dismissing the application.   An application for a

rehearing having been denied by the commission, this appeal was taken by the carriers and a supersedeas of the order granted by this court.

The refusal of the commission was placed primarily upon the ground that the evidence submitted by appellants was insufficient to show that the exchange of property between them was necessary or proper for the service, accommodation or convenience of the public. In the course of its report, applicable to this and other similar cases heard at the same time, the commission said:

"Common carrier transportation in Pennsylvania may lawfully begin only after the commission has found that it is necessary or proper for the public service. If application is made for the right to furnish service over a route and from points on the route to points on the lines of other carriers, evidence of need for that service must be introduced and the commission must base its decision upon that evidence. If the [original] application does not include a request for approval of transportation to points off the route, or if no evidence of need for such transportation is offered, no such rights are granted by the certificate. If a separate petition is filed later for such right, as was done in these cases, it is in effect a petition for modification of the certificate by the granting of additional rights. Evidence to show that approval of such additional rights is necessary or proper must be introduced.

"If the joint service has already been established under a bona fide misunderstanding of the service approved by the commission, as in these cases, evidence of the extent to which it has been used by shippers will be received, but its probative value on the question of the necessity or propriety of approval of the application depends upon the circumstances in each case."

Two general questions are here involved. The first

relates to the legal power of the commission to deny to certificated and connecting common carriers, by motor vehicles, the right to interchange, under joint rates, property shipped from a point on the line of one to a point on the line of the other, and vice versa; the second, if the first be resolved in favor of the power to make it, concerns the reasonableness of the order.

1. When considering the question of the jurisdiction and power of the commission to grant or refuse the prayer of the joint petition, it should be noted that the interchange of freight at Harrisburg between the appellants, which had been going on since 1930, had been neither authorized nor formally approved by the commission; at most it was voluntary and permissive. Nor did appellants complain against General Order No. 29, as being unduly discriminatory against truckers and preferential to railroads, in the manner authorized by Art. III, Sec. 1 (d), of our Public Service Company Law of July 26, 1913, P. L. 1374. On the contrary, they submitted themselves to the jurisdiction of the commission and made application, under the provisions of the order, to be granted the right to continue the practice which they had established.

By Art. 1, Sec. 1, of the statute it is provided that the term "service," as used therein, includes, inter alia, "the interchange of facilities between two or more public service companies," and by Art. II, Sec. 1 (e), connecting public service companies are required to file, post and publish their tariffs of "the joint rates" in force between them.

We are of opinion that the commission, under the provisions of the statute, has jurisdiction to direct, approve or forbid the interchange of freight between two or more connecting motor carriers, operating under their respective separate certificates. Cf. Lehigh Valley Transit Co. v. P. S. C., 78 Pa. Superior

Ct. 105, 111; York Motor Express Co. v. P. S. C., 110 Pa. Superior Ct. 197, 168 A. 327.

It would not be questioned that the commission has jurisdiction to regulate a through service by a single carrier between Greencastle and Philadelphia, by way of Harrisburg, and it would seem to be illogical and unreasonable to hold that it may not likewise regulate a public service, of the same general character and between the same points, when rendered jointly by two carriers connecting at Harrisburg.

2. Having concluded the commission had power to make the order appealed from, we turn to a consideration of its reasonableness in the light of the evidence. As we read the record, this second question is the serious one in the present case. As correctly stated by the commission, the question of the propriety of approving a joint service, already established, must be determined by a consideration of the evidence submitted in each individual case.

As stated, the specific ground for the denial of the application of these appellants was that the evidence failed to show that continuance of their present relations and practices is necessary or proper for the accommodation or convenience of the shipping public.

We cannot agree with this conclusion. There was evidence that the amount of freight transferred at Harrisburg between appellants was by no means negligible. During the four and one-half months immediately preceding the hearing, 191,369 pounds of freight were transferred from Motor Freight Express to Horn's Motor Express, Inc., and 78,128 pounds from Horn's Motor Express, Inc. to Motor Freight Express. Twenty-two factories and business houses were shown to be using the transfer privilege from points on the route of Horn's Motor Express, Inc. to points on the route of Motor Freight Express, and twenty-nine from points on the route of the latter to points

on that of the former. The bulk of the shipments were from points in the Cumberland Valley, located upon the route of Horn's Motor Express, Inc. to points on that portion of the route of Motor Freight Express extending from Harrisburg, through Lancaster, to Philadelphia.

It is admitted by counsel for appellants in their brief that there was not sufficient evidence to justify the commission in granting a general approval to interchange freight between points upon the route of Horn's Motor Express, Inc. and all points upon the extensive routes of Motor Freight Express. It was stated by them at bar that it would be entirely satisfactory to their clients if their right to exchange freight at Harrisburg should be so limited that the permission would apply only to transportation to and from points on the route of Horn's Motor Express, Inc., and points upon that portion of the route of Motor Freight Express which extends from Harrisburg, through Lancaster, to Philadelphia. Indeed, one of the grounds upon which appellants sought a rehearing was that they might be afforded an opportunity to thus limit their application.

No evidence was offered in support of the protest of the Pennsylvania Railroad Company—the rail competitor of appellants. The necessity for the service which appellants desire to continue is indicated by the testimony of Harry E. Walker, a druggist residing in Chambersburg and operating stores there as well as in Mercersburg and Shippensburg. It was to the effect that for three years he had been using this joint service in having goods shipped from Philadelphia several times each week. An excerpt from his testimony reads: "Q. Why do you use motor transportation instead of rail? A. For the service and the quickness of the delivery. Q. If goods had been shipped by rail how many days does it take for you to receive them

from Philadelphia? A. We have received them overnight; quite frequently it runs three to four to as high as five days. Q. Three to four to five days? A. Yes. Q. Is it an accommodation and convenience in the operation of your business to have overnight service? A. Yes. Q. Between Chambersburg and Philadelphia via Horn's Motor Express? A. It is."

Ray Carr, engaged in the frigidaire and electric supplies business at Chambersburg, testified that appellants had been rendering a satisfactory service between Philadelphia and Chambersburg which he preferred to rail service because, "Express is too expensive, and freight is too long delivery." There was testimony to the same effect from other shippers.

We think the evidence upon this record is sufficient, both as to quantity and quality, to show that approval of the application, subject to the limitation agreed to by appellants, would not only be proper for the accommodation and convenience of many shippers along the routes, but will permit the continuance of a public service of which they have availed themselves and of which they stand in need.

But there is another feature of the case which seems to us to require a reversal of the order. Reference has been made to the service rendered by Daily Motor Express, Inc., between Carlisle and Harrisburg, and to the exclusion of Horn's Motor Express, Inc., from that service. On July 10, 1933, the commission approved the joint application of Daily Motor Express, Inc., and Motor Freight Express for interchange of shipments at Harrisburg and participation in through and joint rates.

The situation created by the approval of that application and the refusal of the present one is that a manufacturer or merchant, living in Carlisle, may make through shipments by truck from Carlisle to Philadelphia, for instance, and receive them from Lan-

caster or Philadelphia at his factory or store in Carlisle, while a similar shipper, living in Chambersburg, Shippensburg or Greencastle, cannot, if the order is affirmed, avail himself of the same character of service. We can see no reason why residents in the Cumberland Valley living south of Carlisle should not be afforded the same character of service as the commission has given residents of Carlisle and Mechanicsburg in the upper part of the same valley. An order which will result in such discrimination is, in our opinion, neither reasonable nor in conformity with law.

Order reversed and record remitted for further action not inconsistent with this opinion.