Lancaster Transportation Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 12, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*James H. Booser,* with him *W. G. Johnstone, Jr., Windolph & Johnstone, Robert C. Fluhrer, K. L. Shirk, Sr.* and *McNees, Wallace & Nurick,* for appellants.

*John W. Mentzer,* with him *William J. Grove* and *Charles E. Thomas,* for appellee.

*Robert H. Shertz,* with him *Shertz, Barnes & Shertz,* for intervening appellees.

OPINION BY RHODES, P. J., July 19, 1951:

This is an appeal from an order of the Pennsylvania Public Utility Commission dismissing complaint against an interchange service at West Chester, Pennsylvania, instituted by Highway Express Lines, Inc., and Shirk's Motor Express Corporation. The effect of the order is to permit the two connecting local carriers by motor truck to fully interchange shipments and establish joint haul practices, under the Commission's General Order No. 29, as construed by the Commission, without any proceeding to determine public necessity for the interchange and the resulting new service.

The present proceeding had its origin in a complaint filed with the Commission on November 10, 1949, by Lancaster Transportation Company, York Motor Express Company, Keystone Express and Storage Com-

pany, Motor Freight Express, and Ephrata Motor Express, common carriers by motor vehicle. In the complaint it was averred that the interchange service of Highway Express Lines, Inc., and Shirk's Motor Express Corporation was unlawful. With the exception of Ephrata Motor Express, all of the complainants are authorized to transport property between the City of Lancaster and the City of Philadelphia. The facts alleged in the complaint were admitted, but the conclusion was denied. The motion to dismiss the complaint having been granted the complainants have appealed.

Highway Express Lines, Inc., operates as a class D carrier under a certificate originally issued in 1938 to Horlacher Delivery Service. The rights thereby granted and pertinent to this proceeding are to transport property between points in Philadelphia and the area surrounding Philadelphia included within a line passing through, inter alia, West Chester, Phoenixville, Coatesville, Perkasie, Newtown, Morrisville, and Marcus Hook. Shirk's Motor Express Corporation holds a certificate of public convenience granted in 1948 which, inter alia, authorizes it to transport property as a class A carrier between the City of Lancaster or other Lancaster County points and the Borough of West Chester, subject to a number of restrictions. One of those restrictions (Fourth) forbids it to "render service between points on Highway Route 30 or between the City of Lancaster and points on Highway Route 30."

The complaint set forth, and it was admitted, that Highway and Shirk had been interchanging shipments at West Chester, that is, Shirk accepts shipments in Lancaster destined for Philadelphia and the surrounding area by way of interchange with Highway, and Highway accepts shipments in Philadelphia and in the Philadelphia area destined for Lancaster and points in Lancaster County by way of interchange with Shirk at West Chester. The complainants allege that such inter-

change was unauthorized by the certificates of Highway and Shirk, and that it was in violation of the rules and regulations of the Commission, as set forth in General Order No. 29, and they asked that Highway and Shirk be ordered to discontinue such interchange by appropriate Commission action.

It should be noted that Highway's certificate also gave it certain operating rights as a class B carrier: "Second: That no right, power or privilege is granted to transport property locally between points in any city or borough within this area, except that the rights herein granted will include the right to make arrangements with Class A carriers for delivery in the local areas authorized herein, notice of which arrangements shall be submitted immediately to the Commission, the intent of this provision being to authorize the certificate holder to operate as a Class B carrier in so far as Rule 5 (e) of General Order No. 29 is concerned with reference to local areas."

In its order dismissing the complaint, the Commission apparently held that, under its interpretation of General Order No. 29, promulgated in 1933, and under General Order No. 29, as amended and revised, effective January 1, 1939, Highway and Shirk had the full right to interchange as they claimed, and that no restrictions in the certificates of either Highway or Shirk prevented such interchange. After entry of the Commission's order, the Lancaster Transportation Company, one of the complainants, presented a petition for modification of the order of dismissal and for rehearing; this was denied.

The reasoning process by which the Commission reached its ultimate conclusion to dismiss the complaint may be summarized briefly. In its order the Commission refers to the fact that Highway by the certificate of 1938, was granted certain rights to operate as a class B carrier, that is, "the right to make arrangements with Class A carriers for delivery in the local areas author-

ized herein, notice of which arrangements shall be submitted immediately to the Commission, the intent of this provision being to authorize the certificate holder to operate as a Class B carrier in so far as Rule 5 (e) of General Order No. 29 is concerned with reference to local areas." The Commission then went on to say that under General Order No. 29, section 5 (e), of 1933, Highway, as a class B carrier, had the right to accept shipments from Shirk by way of interchange at West Chester, for delivery only within the local area of Highway. For this statement the Commission relies on section 5 (e) of General Order No. 29 of 1933, which, as quoted by the Commission, reads as follows: "Rule 5 Class (a) Truckers Unless otherwise specifically provided in the certificate of public convenience, truckers operating between fixed termini or over designated routes shall have the following rights and be subject to the following limitations: . . . (e) They shall not participate in through routes or joint rates with other truckers, unless application has been made for such right and approval received, excepting that arrangements may be made with Class (b) carriers for delivery in their local areas, notice of which arrangements shall be immediately submitted to the Commission." On this point the commission concluded: "The certificate of Highway Express Lines, Inc., therefore, permits an interchange with a Class A carrier at any point within the local area of Highway Express Lines, Inc. for delivery within that area but did not permit the pick-up and delivery by a Class B carrier to a Class A carrier for delivery within the local area of such Class A carrier." Thus, in effect, the Commission found authority, under section 5 (e), General Order No. 29 of 1933, for the interchange in one direction—Lancaster to Philadelphia, or Shirk to Highway.

Continuing, the Commission approves the interchange between Highway and Shirk at West Chester, in

both directions, by its interpretation of its own amended General Order No. 29 of 1939. In so doing, the Commission relies on rules 202 and 203 of that general order. That portion of rule 202 of General Order No. 29 of 1939, upon which the Commission relies, provides as follows: "Rule 202 Class A Common Carriers Unless otherwise specifically provided in the certificate of public convenience, common carriers by motor vehicle operating between fixed termini or over designated routes shall have the following rights and be subject to the following limitations: . . . (b) They may upon written notice to the Commission accept property destined to points not on the route or participate in through routes or joint rates only under the conditions following: 1. Without further approval of the Commission: . . . (d) For delivery to a Class B carrier for delivery to a point in the local area of such Class B carrier. (e) For receipt from a Class B carrier for delivery to a point on the route of such Class A common carrier."

Rule 203 of such general order provides in full as follows: "Rule 203 Class B Common Carriers Unless otherwise provided in the certificate, holders of Class B certificates may transport between any points in the area designated in the certificate including pick-up and delivery for Class A carriers."

After pointing out that Highway, under its original certificate, had certain rights as a class B carrier, the Commission then holds that rules 202 and 203 of General Order No. 29 of 1939 gave Highway, as such class B carrier, not only the interchange right to deliver for a class A carrier, but also the right to pick up and interchange in full with a class A carrier. In this connection the Commission makes the following comment in its order: "The amendment and revision of General Order 29, effective January 1, 1933 [1939], for the first time gave a Class B carrier the right to pick-up and deliver for a Class A carrier. The right to interchange granted

by the original order was given under section 5 E of the old General Order 29. Section 202, section B-1 (d) and (e) of the new General Order 29, revised section 5 E of the old order and defined the interchange right between a Class A and Class B carrier so as to allow both pick-up and delivery between a Class A carrier and a Class B carrier. The additional right to interchange allowed by Section 202, section B-1 (d) and (e), by its amendment of the old order did permit a Class B carrier whose rights were granted under the prior General Order 29, to exercise the additional rights of interchange granted by the revision without the necessity of the certificate holder asking for a modification of its rights. Applying the same rule of reason, Highway Express Lines, Inc., in the order granting its rights having been expressly given the right to interchange with a Class A carrier, would be entitled under the revision of Rule 5 (e) of General Order 29, to exercise the full interchange rights of pick-up and delivery for a Class A carrier given to a Class B carrier by that revision."

The Commission thereby construes rules 202 and 203 of General Order No. 29 of 1939 as giving Highway and Shirk the full right of interchange in either direction over the entire extent of their separate certificated routes by blanket operation of the Commission's order and without requiring specific Commission approval.

In addition the Commission construes the restriction in Shirk's certificate forbidding it to "render service between points on Highway Route 30, or between the City of Lancaster and points on Highway Route 30" as indicating an "intention to restrict transportation to points within the service area of the Shirk's Motor Express Corporation and [does] not restrict the interchange rights of Shirk's Motor Express Corporation to accept property within its service area to points outside its service area upon the Lincoln Highway or otherwise." In other words, the Commission holds that the

above restriction in Shirk's certificate does not affect the full right of interchange claimed by Highway and Shirk in the present proceeding.

There is no doubt in our minds that the Commission's action is erroneous and that the result is unlawful. The order will be reversed. The Commission may promulgate such rules and regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties given to it by the Legislature. Act of May 28, 1937, P.L. 1053, § 901, 66 PS § 1341. The Commission may interpret its own rules and regulations, and while its interpretation may be persuasive, it is not binding upon the courts. The Commission by its action or by promulgation of general rules and orders cannot go beyond the bounds of its statutory authority.

It is clear that the Commission, under the statute, has jurisdiction to direct, approve, or forbid the interchange of freight between two or more connecting motor carriers, operating under their respective certificates. *Motor Freight Express et al. v. Public Service Commission*, 117 Pa. Superior Ct. 165, 170, 177 A. 490. But the Commission's jurisdiction can be exercised only in accordance with the statute. Section 202 of the Public Utility Law of May 28, 1937, P.L. 1053, as amended, 66 PS § 1122, provides: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: . . . (c) For any public utility to begin the exercise of any additional right, power, franchise, or privilege. . . . (e) For any public utility; . . . to acquire from, or to transfer to, any person or corporation, including a municipal corporation, by any method or device whatsoever; including a consolidation, merger, sale or lease, the title to, or the possession or use of, any tangible or intangible property used or useful in the public service." Under sec-

tion 203 of the Public Utility Law of 1937, 66 PS §1123, the Commission must hold a hearing, receive evidence, and pass upon the question of public necessity where additional rights are granted a carrier or group of carriers. *Hostetter v. Pennsylvania Public Utility Commission*, 160 Pa. Superior Ct. 94, 97, 49 A. 2d 862. The interchange, or the establishment of joint routes, put into effect by Highway and Shirk involves the exercise of an additional right by those carriers. "The privilege of interchange allows a carrier to accept freight originating at points included in its certificate destined for delivery beyond its territory and to carry it to the interchange station where it is transferred to another carrier which delivers it to the destination in the territory embraced in the latter's certificate": *Hostetter v. Pennsylvania Public Utility Commission*, supra, 160 Pa. Superior Ct. 94, 97, 49 A. 2d 862, 863. Our Courts and the Commission, under the Public Service Company Law of 1913, and the Public Utility Law of 1937 have held that specific Commission approval is necessary for such interchange service as is here involved. As this Court stated, quoting from the Commission report, in *Motor Freight Express et al. v. Public Service Commission*, supra, 117 Pa. Superior Ct. 165, 169, 177 A. 490, 491: " 'Common carrier transportation in Pennsylvania may lawfully begin only after the commission has found that it is necessary or proper for the public service. If application is made for the right to furnish service over a route and from points on the route to points on the lines of other carriers, evidence of need for that service must be introduced and the commission must base its decision upon that evidence.' " To the same effect, see *Alko Express Lines*, 12 Pa. P.S.C. 13; *Rule Issued Against John E. Robertson*, 28 Pa. P.U.C. 162, 174.

It has been held by the courts and commissions of many states, under legislation similar to that of Pennsylvania, that the full right of interchange or the

establishment of through routes between carriers certificated in different areas is a distinct rendition of public service, and requires specific Commission approval in the form of a certificate of public convenience.[1]

We think that, if rules 202 and 203 of General Order No. 29 of 1939 are considered together in their entirety, it is possible to give them an interpretation consistent with the law, requiring specific Commission approval for such interchange rights as are claimed by the two carriers. The Commission has given too broad a meaning to "local area" of class B carriers.

We also refer to the fact that rule 202 (b) 1, previously quoted in part, is restrictive in its terms, and permits through routes or joint rates between A carriers without further Commission approval "only under [certain] conditions." For instance, subsection (c)[2] of section (b) 1 of rule 202 apparently permits through routing by A carriers only where "there is no authorized common carrier service by motor vehicle between the point of origin and point of destination of the ship-

---

[1] *Re Western Motor Transport Company* (Cal. Commission), P. U. R. 1922 C, 12; *Pennsylvania R. Co. v. Public Utilities Commission of Ohio*, 116 Ohio St. 80, 155 N. E. 694; *Application of Calhoun*, 51 Wyo. 448, 68 P. 2d 591; *Eastridge v. Southeastern Greyhound Lines*, 280 Ky. 392, 133 S. W. 2d 95; *Sunset Express, Inc. v. Gulf, C. & S. F. Ry. Co.*, Tex. Civ. App., 154 S. W. 2d 860; *Railroad Commission of Texas v. Red Arrow Freight Lines, Inc.*, Tex. Civ. App., 96 S. W. 2d 735; *Enid Transfer & Storage Co., Inc. v. State et al.*, 201 Okla. 274, 190 P. 2d 150. See section 216 (49 U. S. C. A. 316) of the Federal Motor Carrier Act of 1935 which specifically authorizes carriers to establish through routes and joint rates.

[2] "(c)    For delivery to other Class A common carriers by motor vehicle at a point within the certificated rights of such other motor carrier, provided there is no authorized common carrier service by motor vehicle between the point of origin and point of destination of the shipment."

ment." Assuming that Highway has full class B rights, as the Commission indicates, the allowance of the present interchange without specific Commission approval gives to carriers A and B (Shirk and Highway) in combination greater rights of interchange than two class A carriers would have under General Order No. 29 of 1939. However, we are here concerned with the interpretation placed on General Order No. 29 of 1939 by the Commission in its order of dismissal of the complaint in the present proceeding, and we only decide that such interpretation is untenable and produces a result in conflict with the provisions of the Public Utility Law.

General Order No. 29 was promulgated by the Commission pursuant to the authority contained in section 901 of the Public Utility Law of May 28, 1937, P.L. 1053, 66 PS § 1341, which provides that "The commission may make such regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties under this act." Such regulations of the Commission are subject to judicial review. *Pennsylvania Railroad Co. v. Driscoll,* 336 Pa. 310, 334, 9 A. 2d 621; *Metropolitan Edison Co. v. Public Service Commission,* 127 Pa. Superior Ct. 11, 20, 191 A. 678. The power of the Commission is statutory, and the legislative grant in any particular case must be clear. *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545. The power of an administration agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the legislature as expressed by the statute. *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S. Ct. 397, 400, 80 L. Ed. 528, 531. If possible, the construction of such rules and regulations, as well as the rules and regulations themselves, must be consistent with the law.

296

Until such time as certificates of public convenience are granted, based on a finding that the new service is necessary or proper for the service, accommodation, convenience, or safety of the public, the questioned service being rendered by Highway and Shirk is unlawful, and should cease.

The order of the Commission is reversed, and the record is remitted to the Commission for further proceedings and action not inconsistent with this opinion.