The Pennsylvania Railroad Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued July 17, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Donald A. Brinkworth,* for protestant, appellant.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for protestants, appellants.

*Henry M. Wick, Jr.,* with him *Samuel P. Delisi,* for protestants, appellants.

*William J. Wilcox,* for protestant, appellant.

*James W. Hager,* with him *McNees, Wallace & Nurick,* for protestant, appellant.

*L. Norman Dilley* and *Voorhees, Dilley, Keck* and *Rowley,* for protestant, appellant.

*Andrew C. Armstrong,* for protestant, appellant.

*John H. Scott, Jr.,* and *Reed, Smith, Shaw and Mc-Clay,* for protestant, appellant.

*Owen B. McManus,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

*Jerome Solomon,* with him *Joseph H. Reich,* for applicant, intervening appellee.

OPINION BY ERVIN, J., October 2, 1956:

These appeals are by protestant motor and rail carriers from an order of the Pennsylvania Public Utility Commission, dated May 28, 1956, granting to John Benkart & Sons Co., the intervening appellee, hereinafter called Benkart, "the right to operate motor vehicles as a common carrier as follows: 'To transport, as a Class D carrier, iron and steel and iron and steel articles from points in the counties of Allegheny and Beaver to points in Pennsylvania east of a line drawn along

the eastern boundaries of the counties of McKean, Cameron, Clearfield, Cambria and Bedford, and the return of refused or damaged merchandise;

'To transport, as a Class D carrier, iron and steel and iron and steel articles from points in the counties of Allegheny and Beaver to points located west of the eastern boundaries of the counties of McKean, Cameron, Clearfield, Cambria and Bedford, and the return of refused or damaged merchandise;

'To transport, as a Class D carrier, iron and steel and iron and steel articles from points in the County of Cambria to points located west of the eastern boundaries of the counties of McKean, Cameron, Clearfield, Cambria and Bedford (excluding the City of Franklin, Venango County, and points within twenty-five (25) miles by the usually traveled highways of the limits of the said city), and the return of refused or damaged merchandise.'

"2. That, in all other respects, approval of the application be and is hereby denied.

"3. That this be entered in lieu of our prior orders dated March 12, 1956."

On May 25, 1937, Benkart, at Docket A. 23797, Folder 4, had been certificated to "transport, as a common carrier, inter alia, property in that part of the Commonwealth of Pennsylvania west of, and including, counties of McKean, Cameron, Clearfield, Cambria and Bedford, such transportation to be limited to that which requires the use of trucks having winches or special equipment attached or trucks of special body construction and to the transportation of construction materials and contractors' machinery when such transportation is in connection with the transportation of articles requiring special equipment."

On May 19, 1947, Benkart, at Docket A. 23797, Folder 6, had been certificated to "transport as a com-

mon carrier, property in shipments weighing 5,000 pounds or more, which because of its size or weight, requires special handling and the use of special equipment such as trucks having winches or special equipment attached or trucks of special body construction or pole trailers or drop-frame trailers from points in the City of Pittsburgh, Allegheny County and within a radius of fifty (50) miles thereof, to points in Pennsylvania east of the line drawn along the eastern boundary of the counties of McKean, Cameron, Clearfield, Cambria and Bedford."

Benkart, acting under the authority above granted, has for many years transported sheet steel and coil steel and similar articles of iron and steel.

On July 13, 1954 our court filed an opinion in *W. J. Dillner Transfer Co. v. Pa. P. U. C. (No. 2)*, 175 Pa. Superior Ct. 472, 107 A. 2d 164, in which we affirmed a finding by the Commission that the transportation of coils of steel and sheet steel of the size and weight involved did not require special handling and the use of special equipment and that therefore such transportation was not within the scope of the certificated rights granted to Dillner.

On October 7, 1954 Benkart, because of doubts raised by the *Dillner* opinion, filed two separate applications with the Commission asking for additional authority, the one being at A. 23797, Folder 9, wherein authority was sought "To transport, as a Class C carrier, iron and steel, iron and steel articles and products and such materials, supplies and equipment used or useful in the production, assembly and distribution of iron and steel and iron and steel articles and products from points in the City of Pittsburgh, Allegheny County, and within a radius of 50 miles thereof, to points in Pennsylvania east of a line drawn along the eastern bound-

ary of the Counties of McKean, Cameron, Clearfield, Cambria and Bedford."; the other being at A. 23797, Folder 10, wherein authority was sought "To transport, as a Class D carrier, iron and steel, iron and steel articles and products and such materials, supplies and equipment used or useful in the production, assembly and distribution of iron and steel and iron and steel articles and products between points in that part of the Commonwealth of Pennsylvania west of and including the Counties of McKean, Cameron, Clearfield, Cambria and Bedford."

At the hearing on December 9, 1954 the applicant amended both applications commodity-wise and limited the transportation to "iron and steel and iron and steel articles" without any change as to the areas in which the proposed services were to be rendered.

On March 21, 1955, the Commission granted the applicant's petition for consolidation of the proceedings at A. 23797, Folders 9 and 10, "for the purpose of hearing."

On March 12, 1956 the Commission issued separate short form orders. Thereafter some of the carriers took appeals from the Commission's action at A. 23797, Folder 9, and some from its action at A. 23797, Folder 10, and some from its action at A. 23797, Folders 9 and 10. On March 28, 1956 we granted a supersedeas "without prejudice to Benkart to operate under its prior rights." We also remanded the record to the Comission for the issuance of a "long form" order.

In its "long form" order of May 28, 1956, quoted at the beginning of this opinion, the Commission consolidated both Folders 9 and 10 and did not separate the findings nor identify which findings apply to which folder and in its discussion it did not separate the evidence.

Benkart had been authorized to do only heavy hauling. The Commission's order now gives Benkart the right to transport iron and steel and iron and steel articles,[1] as a Class D carrier, from points in Allegheny and Beaver Counties to any place in Pennsylvania and to return refused or damaged merchandise.

The Commission's order also gives Benkart the right to transport iron and steel and iron and steel articles, as a Class D carrier, from points in the County of Cambria to points located west of the eastern boundaries of McKean, Cameron, Clearfield, Cambria and Bedford Counties with certain exceptions.

The scope of our review in cases of this kind has been thoroughly and recently discussed by this Court. We are not to exercise our independent judgment on the record nor to weigh conflicting evidence. Our duty is to determine from the record whether there is substantial evidence to support the findings and order of the Commission. *Motor Freight Express v. Pa. P. U. C.,* 180 Pa. Superior Ct. 622, 626, 627, 121 A. 2d 617.

In order to obtain the additional authority sought, the burden of proof was upon the applicant to establish (1) the need for additional service and (2) inadequacy of existing service. *Modern Transfer Co. et al. v. Pa. P. U. C.,* 179 Pa. Superior Ct. 46, 51, 115 A. 2d 887; *Lancaster Transportation Co. v. Pa. P. U. C.,* 181 Pa. Superior Ct. 129, 136, 124 A. 2d 380.

As to application A. 23797, Folder 9, the record is barren as to any substantial evidence to show inadequacy of existing service.

---

[1] The Interstate Commerce Commission has prepared a list of 282 articles which it has stated may be transported by a carrier having authority to transport iron and steel articles. Ex Parte MC-45, reported in 61 M.C.C. 209, at page 276.

The applicant produced five witnesses. George W. Hayes testified that he is Traffic Manager for Pittsburgh-Des Moines Steel Co. of Neville Island, Pa. The company's business is that of steel fabricators and erectors. He gave a representative list of shipments covering the years 1952, 1953 and 1954. Out of 26 places only 2 were represented in the territory covered by A. 23797, Folder 9. He also stated that he has had requirements for shipments in 1954-1955 east of Harrisburg but he has used regular over the road haulers and that the service has been satisfactory.

George F. Boehm testified that he is Assistant Office Manager of United States Steel Supply Division of the United States Steel Corporation. The company has a plant located at Reedsdale St., North Side, Pittsburgh, and also at McKees Rocks. With but very few exceptions he has used the applicant for service to points within 65 miles of Pittsburgh.

W. J. Brown testified that he is District Traffic Manager of the Bethlehem Steel Co., Johnstown, Pa. He used the applicant to transport mainly from Johnstown to Allegheny County and testified only as to the use of the applicant in the territory covered by A. 23797, Folder 10, which covered the 25 counties located west of the eastern boundaries of the Counties of McKean, Cameron, Clearfield, Cambria and Bedford. He could not think of any points in Eastern Pennsylvania for which he had used Benkart's service.

Henry J. G. Knaus testified he is Assistant Traffic Manager of H. H. Robertson Co., Ambridge. The company is engaged in the manufacture of steel building products. During the years 1953 and 1954 he had no occasion to ship east of Cambria County. He could not think of any points where service of applicant had been used other than the territory in A. 23797, Folder 10.

J. B. Olsson testified that he is Assistant General Manager of the Keystone Fabricating Co., Pittsburgh, Pa. The company is engaged in the fabricating of structural steel for buildings. With the exception of Erie, Pa. he had used the applicant only to points within approximately 35 miles of Pittsburgh, Pa.

None of these witnesses testified as to inadequacy of existing service with the exception of W. J. Brown. When asked whether certain carriers normally provided him with reasonably satisfactory service, he said: "At times, yes, and at times, no." As to one carrier he testified: "He may not be able to furnish us with all the equipment we need just when we need it and that's the reason we want Benkart." An analysis of Mr. Brown's testimony will reveal that he was testifying concerning the territory involved in A. 23797, Folder 10, to wit: the 25 western counties.

The only other evidence that could possibly support the application as to A. 23797, Folder 9, is Exhibit 7, which for a two-year period revealed that the applicant transported shipments to approximately 13 destinations in 11 eastern counties, there being 42 counties in the territory covered by A. 23797, Folder 9. It is also difficult, if not impossible, to determine which shipments in Exhibit 7 were transported under the rights previously given to Benkart and which were transported without any authority from the Commission.

As to A. 23797, Folder 9, the applicant has totally failed to meet the burden of proving inadequacy of existing service. On the other hand, the protestants produced many witnesses to show that the motor and rail carriers were furnishing adequate service to all parts of the territory covered by A. 23797, Folder 9. We are, therefore, of the opinion that the order of the Commission as to A. 23797, Folder 9, must be reversed.

The testimony of the applicant's five witnesses does reveal that they have used the services of the applicant quite extensively in the territory covered by A. 23797, Folder 10, which is the territory consisting of the 25 counties west of and including the counties of McKean, Cameron, Clearfield, Cambria and Bedford. Some of this service had been rendered under authority previously granted by the Commission but much of it was rendered without any authority from the Commission.

What was so well said by President Judge RHODES in *Lancaster Transportation Co. v. Pa. P. U. C.*, supra, at pages 138, 139, is applicable to this case: "The mere fact of prior operation without commission approval is not per se equivalent to an offense which will prohibit absolutely the acquisition of proper authority when application is subsequently made. The distinction between those violations which are prohibitive and those which will be accepted as competent evidence is, to a large degree, dependent upon the existence of good faith. If the violation is the result of a bona fide misunderstanding of the service authorized by the commission, there is no substantial basis, either legally or morally, to object to its use in a certification proceeding. Motor Freight Express v. Public Service Commission, 117 Pa. Superior Ct. 165, 169, 173, 177 A. 490; Arrow Carrier Corporation v. Public Service Commission, 120 Pa. Superior Ct. 570, 575, 182 A. 711; Cage v. Public Service Commission, 125 Pa. Superior Ct. 330, 336, 337, 189 A. 896. On the other hand, where the violation is one resulting from a deliberate disregard of the certificate limitations or the law, then, of course, the wrongdoer should not profit from his own deliberate wrong." The Commission made no finding as to the bona fides of the applicant's acts in this case. Such a finding is essential, particularly in a case where the evidence as

to inadequacy of existing service is meager. Likewise the Commission failed to make any finding as to inadequacy of existing service in the territory covered by A. 23797, Folder 10. There is some evidence in the testimony of W. J. Brown as to inadequacy of the existing service. We believe that his testimony was primarily directed at the territory covered by A. 23797, Folder 10. The Commission did say: "The present applications are supported by evidence of the continual use of the applicant's service and existing present need for the service."

Since we are going to remand A. 23797, Folder 10, to the Commission for further proceedings, it might be well to again call to the Commission's attention that a "finding of public necessity could not be supported merely by testimony as to a few isolated complaints, especially in view of the nature of the territory and the extensive and comprehensive authority sought." *Modern Transfer Co. v. Pa. P. U. C.*, supra, pages 53-55; *Lancaster Transportation Co. v. Pa. P. U. C.*, supra, at page 135. The Commission also seemed to make the "public interest" a standard for the grant of authority rather than the standard prescribed by the legislature. We call the Commission's attention to §203(a) of the Pennsylvania Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1123, which provides that the Pennsylvania Public Utility Commission will issue a certificate of public convenience only if and when it "shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. . . ."

Because of the long period of service rendered by the applicant in the territory covered by A. 23797, Folder 10, we are of the opinion that the order of the Commission as to A. 23797, Folder 10, should be vacated and

the record remanded to the Commission for further hearings and findings to establish (1) the need for additional service and (2) inadequacy of existing service.

The order of the Commission as to A. 23797, Folder 9, is reversed.[2]

The order of the Commission as to A. 23797, Folder 10, is vacated and remanded to the Commission for further proceedings not inconsistent with this opinion.

All costs to be paid by John Benkart & Sons, Co., intervening appellee.

---

[2] The order of the Commission as to A. 23797, Folder 9, was apparently intended as an amendment to applicant's right to transport as a common carrier under A. 23797, Folder 6. The latter is not affected by this reversal.